### 42212. GEORGIA STATE BOARD OF PHARMACY
### v. LOVVORN et al.
(336 SE2d 238)

HILL, Chief Justice.

Is it a violation of a legislator's constitutional duty to the people for such legislator, who is an attorney, to represent a client before a state administrative agency when no fee is charged for services rendered?[1]

On October 23, 1984, the Georgia State Board of Pharmacy, an agency of the State of Georgia, issued a notice of hearing alleging that William Robert Lovvorn, a registered pharmacist, and his pharmacy, had committed certain acts which would, if proven, constitute a violation of certain state pharmacy and drug laws and Pharmacy Board rules and regulations. Thomas B. Murphy, Speaker of the House of Representatives of Georgia, filed with the Board an answer as counsel for Lovvorn. The Attorney General, on behalf of the Board, moved to disqualify Murphy as attorney for Lovvorn based upon Art. I, Sec. II, Par. I of the Constitution, supra, note 1, as applied in *Dept. of Human Resources v. Sistrunk*, 249 Ga. 543 (291 SE2d 524) (1982). The hearing officer denied the motion to disqualify and that ruling

---

[1] Art. I, Sec. II, Par. I of the Constitution of 1983 provides in pertinent part as follows: "Public officers are the trustees and servants of the people and are at all times amenable to them."

was affirmed by the superior court. This court granted the Pharmacy Board's application to appeal.

The facts are undisputed. Speaker Murphy is a member of the House of Representatives, representing District 18. He filed a certificate stating that he has not and will not charge Lovvorn or his pharmacy any fee for representing them. Thus, he urges that he stands no chance of having any personal financial gain.

In *Sistrunk*, supra, this court held that "the Constitution prohibits a legislator from representing a client, for his *own financial gain*, in any civil transaction or matter wherein the State of Georgia shall be an opposing party." (Emphasis supplied.) 249 Ga. at 547.[2] The cases cited by the court in *Sistrunk* involved the financial gain of the public officer/trustee involved, and the opinion uses the phrase "personal financial gain" or its equivalent repeatedly.

The Attorney General urges us to extend *Sistrunk*; the Speaker requests that we overrule it, or at least not extend it. Three members of the court would overrule *Sistrunk*, and they therefore concur in the judgment only; three members of the court would adopt a rule to encompass the facts presented here and they therefore dissent. The writer of this opinion declines either to expand or overrule *Sistrunk*. My reason for adhering to *Sistrunk* is explained in that opinion, to wit: the Constitution prohibits a lawyer/legislator from using his legislative office to attract clients to sue the state to generate fees for his law office. My reason for declining to extend *Sistrunk* is that the Constitution does not prohibit a lawyer/legislator from using his legislative office to serve his or her constituents where no fee is paid.[3] See also OCGA § 16-10-5 (a). Political influence exists, and will continue to do so; this is a fact of life. Although this court can correct errors of law, like them or not we cannot change the facts of life.

Therefore, for divergent reasons, the judgment of the trial court is affirmed.

*Judgment affirmed. Clarke, Smith and Bell, JJ., concur in the judgment only. Marshall, P. J., Gregory and Weltner, JJ., dissent.*

CLARKE, Justice, concurring.

I concur in the judgment but I would have reached this result based upon the reasoning contained in my dissent and the dissents of then Chief Justice Jordan and Justice Smith in *Dept. of Human Re-*

---

[2] In *Sistrunk*, the trial court found that the lawyer/legislator was "practicing his profession for compensation." 249 Ga. at 543.

[3] The dissenting justices do not contend that the constitutional provision in issue is applicable here. Instead, based upon an interpretation of our rules and a legislator's statutory oath of office, the dissenting justices would have the court exercise its supervisory powers to regulate the practice of law by legislators. In my view, absent constitutional command, this court should not undertake to supervise the practice of law by lawyer/legislators.

*sources v. Sistrunk*, 249 Ga. 543 (291 SE2d 524) (1982).

I am authorized to state that Justice Smith and Justice Bell join in this concurrence.

MARSHALL, Presiding Justice, dissenting.

A disciplinary proceeding was initiated before the Georgia State Board of Pharmacy, an agency of the State of Georgia, against Lovvorn, a registered pharmacist, and his pharmacy. Thomas B. Murphy filed with the board an appearance as counsel for Lovvorn. The Attorney General, on behalf of the board, submitted a "Motion to Disqualify Thomas B. Murphy as Attorney for Defendant."

A hearing officer denied the motion. That ruling was affirmed by the superior court, and we granted discretionary appeal.

It is agreed that at all times material Speaker Murphy was a member of the Georgia House of Representatives, and its Speaker. He filed an affidavit, which is undisputed, stating that he has refused compensation from Lovvorn and "therefore, stand[s] no chance of having any personal financial gain," and that he is representing Lovvorn "without any hope of financial gain."

In affirming the hearing officer, the superior court observed:

"[T]his Court concludes that the decision of the Georgia Supreme Court in *Georgia Department of Human Resources v. Sistrunk*, 249 Ga. 543 [291 SE2d 524] (1982), does not prohibit a lawyer/legislator from representing a client in an adversarial proceeding before an administrative agency when no fee is charged for services rendered."

1. Our opinion in *Sistrunk*, supra, was in two parts. The first was a rejection of the Attorney General's contention that a legislator owed "complete loyalty" and a "fiduciary duty" to the Department of Human Resources. The Attorney General also pointed out several provisions of the Code of Professional Responsibility, alleging impropriety or conflict of interest, to which the legislator involved in *that* case asserted "that nothing suggested by the Department is contrary to the Code of Professional Responsibility." We held there as follows: "As to Hill's last contention, we agree. There is no dual representation in these circumstances, for the plain reason that a member of the General Assembly represents not the government of our State, nor any of its branches, departments, or agencies, but the electorate which is his constituency." 249 Ga. at 543. (It is important to note that a review of the briefs filed by the parties in *Sistrunk* reveals no reference to EC 7-9, *infra*, and hence its effect was not among those propositions "suggested by the Department" as "contrary to the Code of Professional Responsibility.")

So ruling, we went on to state: "The issue in this case is, then, the meaning of the constitutional provision declaring that '[p]ublic

officers are the trustees and servants ·of the people, and at all times amenable to them.' " 249 Ga. at 544.

The answer to that inquiry, reiterated in *Stephenson v. Benton,* 250 Ga. 726, 728 (300 SE2d 803) (1983), was stated, 249 Ga. at 547, as follows:

"*All* public officers, within whatever branch and at whatever level of our government, and whatever be their private vocations, are trustees of the people, and do accordingly labor under every disability and prohibition imposed by law upon trustees relative to the making of personal financial gain from the discharge of their trusts.

"May one trustee of the people, as attorney and for his own financial gain, initiate or defend a lawsuit on behalf of another which seeks to defeat the official public actions of another trustee of the people?

"May one trustee of the people, as attorney and for his own financial gain, negotiate on behalf of another for a favorable official dispensation at the hands of another trustee of the people?

"Specifically concerning legislators, may one trustee of the people — in whose office are vested the powers of enhancement, diminution, and destruction of the office of another trustee of the people — as attorney and for his own financial gain act in a manner to hinder or frustrate the discharge by such other trustee of the duties of their common trust?

"No."

2. *Sistrunk* spoke in terms of "financial gain" because that was the circumstance then before us. In this case, however, Speaker Murphy is acting "without any hope of financial gain." Hence, the express holding of *Sistrunk,* if strictly construed, does not fit the specific factual elements of this case.

"We rather view this case as one which calls for the exercise of this court's authority to regulate the practice of law. This court has the authority and in fact the duty to regulate the law practice and in the past two decades we have been diligent in our exercise of this duty. [Cits.] The diligence of this court has been directed toward the assurance that the law practice will be a professional service and not simply a commercial enterprise. The primary distinction is that a profession is a calling which demands adherence to the public interest as the foremost obligation of the practitioner." *First Bank &c. Co. v. Zagoria,* 250 Ga. 844, 845 (302 SE2d 674) (1983).

3. At the time Speaker Murphy undertook to represent Lovvorn as an attorney in an adversarial proceeding with an agency of the state, he was a member of the Georgia House of Representatives. As member, he had subscribed to the oath required by Art. III, Sec. IV, Par. II of the Constitution of Georgia of 1983 and by OCGA § 28-1-4, which is as follows: "I do hereby solemnly swear or affirm that I will

support the Constitution of this state and of the United States and, on all questions and measures which may come before me, I will so conduct myself, as will, in my judgment, be most conducive to the interests and prosperity of this state." Speaker Murphy and all other members of the General Assembly labor under this solemn obligation.

The issue of this case, as distinguished from the issue in *Sistrunk*, is this: Can a lawyer (who, because he is a member of the General Assembly is encumbered by this oath) fulfill his duty — *as a lawyer* — to his client in an adversarial proceeding with a state agency?

4. Ethical Consideration 7-9, as republished by this court on November 4, 1983 (252 Ga. 571, 619) provides, among other things, that "a lawyer should always act in a manner consistent with the best interests of his client." It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client — undiluted by conflicting or contrariant obligations, and undiminished by interests of himself or of others.

"Thus we conclude that the relation of attorney and client is of such an important nature that the courts may not allow an attorney to act in any capacity or assume any duty inconsistent with the office of attorney, or the duty owing to the client; public policy also demands that an attorney shall not act in any other capacity where that duty would be incompatible with the general duty as an attorney." *Young v. Champion*, 142 Ga. App. 687, 690 (236 SE2d 783) (1977).

5. Can a lawyer who is already bound by an oath to conduct himself on all questions and measures before him as will in his judgment be *"most conducive to the interests and prosperity of this state"* (OCGA § 28-1-4) — at one and the same time — "always act in a manner *consistent with the best interests of his client"* (EC 7-9), when that client and an agency of the state are locked in adversarial conflict?

The answer, obviously, must be "No."

6. We need not determine whether Speaker Murphy, as Representative, is acting consistently with his duties as a public officer and servant and trustee of the people. Instead, in the exercise of our general supervisory powers over the Bar and the practice of law, we should hold that as attorney, he must be disqualified from representing Lovvorn before the Georgia State Board of Pharmacy. This is so because his oath *as public officer* lays upon him a heavy impediment which severely diminishes his ability, *as attorney* in this case "always [to] act in a manner consistent with the best interests of his client."[1]

---

[1] "Matters relating to the practice of law, including the admission of practitioners, their discipline, suspension, and removal, are within the inherent and exclusive power of the Supreme Court of Georgia. Art. I, Sec. II, Par. IV, Constitution of Georgia of 1976 [Code Ann. §

I am authorized to state that Justice Gregory and Justice Weltner join in this dissent.

DECIDED NOVEMBER 19, 1985 —
RECONSIDERATION DENIED DECEMBER 3, 1985.

*Michael J. Bowers, Attorney General, Mark H. Cohen, Assistant Attorney General,* for appellant.

*Murphy & Murphy, Thomas B. Murphy, Groover & Childs, Denmark Groover, Jr.,* for appellees.

2-204] provides: 'The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided.' See *Wallace v. Wallace,* 225 Ga. 102 (166 SE2d 718) (1969); *Sams v. Olah,* 225 Ga. 497 (169 SE2d 790) (1969)." *Carpenter v. State,* 250 Ga. 177 (297 SE2d 16) (1982). (Now Art. I, Sec. II, Par. III, Constitution of Georgia 1983.)