77815. REESE v. GEORGIA POWER COMPANY et al.
(381 SE2d 110)

PER CURIAM.

Plaintiff Reese seeks review of the summary judgment granted to defendant Georgia Power Company ("Georgia Power") in the personal injury action he filed against it and its employee, defendant Standley. Reese also challenges the trial court's denial of his motion to disqualify as counsel the law firm representing both Georgia Power and Standley.

While driving a Georgia Power vehicle, Standley collided with

Reese, who was riding his motorcycle. Reese suffered personal injury and property damage in the accident, and sued Standley and Georgia Power under the theory of respondeat superior. Both defendants, represented by the same law firm, filed answers denying negligence and liability, with Georgia Power denying that Standley was acting in the scope of his employment. Georgia Power moved for summary judgment and filed supporting affidavits, including one from Standley in which he deposed that he took it upon himself to use his employer's truck to pick up family members on his lunch hour and take them to lunch, and that he did not have authority to use a company truck in such a manner. Reese then moved to disqualify defendants' counsel, asserting that a conflict of interest existed between Georgia Power and Standley. The trial court denied the disqualification motion and granted summary judgment to Georgia Power and Reese now appeals. *Held*:

1. Georgia Power has filed a motion to dismiss Reese's first enumeration of error, wherein Reese raises the disqualification issue. Georgia Power argues that the appeal from the order denying Reese's motion to disqualify defendants' counsel was an untimely interlocutory appeal.

Although Reese did not seek an interlocutory appeal from the denial of his motion to disqualify counsel, he properly placed the issue before this court by raising it in his appeal of the grant of summary judgment. An order granting summary judgment on any issue or as to any party shall be subject to review by appeal, and where such appeal is taken, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability or finality of such judgments, rulings, or orders standing alone. OCGA § 5-6-34 (c); OCGA § 9-11-56 (h); *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242 (248 SE2d 641) (1978). See also *Southeast Ceramics v. Klem*, 246 Ga. 294 (1) (271 SE2d 199) (1980). Therefore, we deny Georgia Power's motion to dismiss Reese's first enumeration of error.

Next, Georgia Power moves to strike certain portions of the supplemental record sent to this court by the trial court. The items Georgia Power seeks to remove from the record now before this court are the motion to disqualify the law firm representing Georgia Power and Standley; the order denying that motion; the two depositions of Standley; and the deposition of Standley's foreman.

We have not considered the depositions Georgia Power seeks to exclude from the appellate record as they were not timely filed.

2. First, Reese argues that the divergent interests of Georgia Power and Standley mandate the disqualification of the law firm representing them.

" 'The objection that an attorney is disqualified by reason of his representing adverse interest is available only to those as to whom the attorney in question sustains, or has sustained, the relation of attorney and client.' 7 CJS Attorney & Client § 47 at 826. . . . [O]ther jurisdictions have . . . characterized [this] as the majority or general rule. See, e.g., *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (3) (5th Cir. 1976); *Murchison v. Kirby*, 201 F.Supp. 122, 123 (1) (S.D.N.Y. 1961); *Otis & Co. v. Pennsylvania R. Co.*, 57 F.Supp. 680, 684 (4) (E.D. Pa. 1944)." *Payne v. St. Louis Grain Corp.*, 562 SW2d 102, 106 (1977). See *Lowe v. Graves*, 404 S2d 652 (1981); *Renard v. Columbia Broadcasting System*, 126 Ill. App.3d 563, 567, 568 (5) (467 NE2d 1090); and 31 ALR3d 715, 726, 727, § 8.

Further, "courts have shown considerable reluctance to disqualify attorneys despite misgivings about an attorney's conduct. As noted in *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979), '(t)his reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons (citations omitted). And even when made in the best of faith, such motions inevitably cause delay.'

"The court in *Nyquist*, accordingly, adopted a very strict standard for motions such as the instant one: Unless an attorney's conduct tends to 'taint the underlying trial,' the court should be quite hesitant to disqualify him. 590 F.2d at 1246. Where there is no claim that the trial will be tainted, the appearance of impropriety, alone, 'is too slender a reed on which to rest a disqualification order except in the rarest case.' Id. at 1247. Accord *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)." *Tadier v. American Photocopy Equip. Co.*, 531 FSupp. 35, 36-37 (1981). See *Blumenfeld v. Borenstein*, 247 Ga. 406 (276 SE2d 607), and *Rivers v. Goodson*, 184 Ga. App. 70(1) (360 SE2d 740). Compare *Georgia State Bd. of Pharmacy v. Lovvorn*, 255 Ga. 259 (336 SE2d 238); *Georgia Dept. of Human Resources v. Sistrunk*, 249 Ga. 543 (291 SE2d 524); and *First Nat. Bank of Chattooga County v. Rapides Bank &c. Co.*, 145 Ga. App. 514 (4) (244 SE2d 51).

In the case sub judice, Standley makes no claim that his trial will be tainted. On the contrary, Reese appears to be the only party aggrieved by defendant's choice of counsel. Consequently, since Reese can show no interest in compelling disqualification of defendants' attorney and since the record does not indicate that either defendant is dissatisfied with defendants' trial counsel, the trial court appropriately denied plaintiff Reese's motion to disqualify. Compare *Wood v. Georgia*, 450 U. S. 261 (101 SC 1097, 67 LE2d 220), where a hearing was ordered by the United States Supreme Court to determine whether a conflict existed which required disqualification of an attor-

ney who represented an employer and its employees, in an action where the employees were subject to criminal prosecution.

3. Reese contends the trial court erred in granting summary judgment to Georgia Power. We disagree.

"(T)o hold a master liable for a tort committed by his servant, it must appear that *at the time of the injury* the servant was engaged in the master's business and not upon some private and personal matter of his own. . . . *The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.* [Cit.]" *Aubrey Silvey Enterprises v. Bohannon*, 182 Ga. App. 738, 739 (356 SE2d 693) (1987).

It is undisputed that, at the time of the collision, Standley was returning to his job site after having had lunch with his mother and sister. The affidavits executed by Standley, his supervisor, and the man to whom the truck involved in the collision was assigned state facts demanding the conclusion that Standley was not acting within the scope of his employment at the time of the collision. The only portion of Standley's affidavit addressing his authority to take the truck home with him and the purpose for that authority is the following: "I do operate a 1 ton truck with air compressor, arc welder, acetylene and oxygen tank, pneumatic jack and other equipment to repair Georgia Power Company vehicles and am allowed to take *this particular truck* home with me at night in case of an emergency whereby Georgia Power Company has an equipment breakdown and needs *this vehicle* on the scene for immediate repairs." [Emphasis supplied.] Standley's statement makes it clear that he was not furnished with just any truck, but with a truck carrying specific equipment to repair vehicles, and that the purpose of Standley taking that particular truck home was to make the truck and its equipment available, not to make Standley available. The affidavit clearly specifies that Standley had a "particular" vehicle assigned to him, which he was not driving at the time of the collision. In addition, the affidavit contains not even a hint that Standley's use of the truck assigned to him was in any way intended to be for his benefit. Rather, it was assigned to him for Georgia Power's benefit. The notion that Standley was therefore acting within the scope of his employment at the time of the collision is directly contradicted in Standley's affidavit: "I have never been authorized by Georgia Power Company to use this 1 ton truck for my lunch hour"; in his supervisor Parrish's affidavit: "Standley was not assigned any Georgia Power Company vehicle to be used for his lunch hour nor was he given authority to operate any Georgia Power Company vehicles during his lunch hour"; and in the affidavit of Monroe, to whom the truck was assigned: "At no time did I give . . . Standley any permission to drive the [truck involved in the collision] on [the day of the collision] or any other time." It is crucial to recognize that

the collision did not occur at a time when Standley was on his way to or from work in the truck assigned to him, but while he was on his lunch hour, on a purely personal mission, driving a truck which he had no authority to drive. In Standley's affidavit and that of his supervisor, it is made abundantly clear that Standley's lunch hour was his own, to use as he chose. "Standley is free to go wherever he chooses to have lunch or eat lunch on the Georgia Power Company premises." (Parrish affidavit); "I was free to eat or go anywhere I desired so far as Georgia Power Company is concerned during my lunch hour." (Standley affidavit). There is not the slightest hint that he was on call during his lunch hour. In fact, he was not paid for his lunch hour. "At the time of the collision I was on my lunch hour and the income I receive from Georgia Power Company is by the hour and I am not paid for my hour's lunch each day." (Standley affidavit); "Standley is paid by the hour and is given one hour for lunch each day and he is not paid for his lunch break." (Parrish affidavit).

Unfortunately for Reese, there are no ambiguities and conclusions to be construed most favorably toward him. The uncontradicted evidence is that Standley, on his own time, took a Georgia Power vehicle he had no authority to take, and drove it on a purely personal mission.

The affidavits do not raise any inference that Standley was in the scope of his employment, and the plaintiff has not, as he must to avoid summary judgment, set forth specific facts showing that there is a genuine issue for trial. *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776 (257 SE2d 186) (1979). See also *Trollinger v. Bob & Carolyn Ford*, 180 Ga. App. 252 (1) (349 SE2d 11) (1986). The record properly before us demands that we affirm the trial court's grant of summary judgment.

*Judgment affirmed. Banke, P. J., Birdsong, Sognier, Pope and Beasley, JJ., concur. Carley, C. J., and McMurray, P. J., concur in Divisions 1 and 2 and dissent as to Division 3. Deen, P. J., and Benham, J., concur in Divisions 1 and 3 and dissent as to Division 2.*

BENHAM, Judge, concurring in part and dissenting in part.

Although I concur with the majority in its treatment of the merits of the grant of summary to Georgia Power, I am compelled to file this dissent because I disagree with the majority's conclusions concerning the disqualification issue. I am of the opinion that the trial court erred in failing to disqualify the law firm representing both Georgia Power and Standley, and therefore the judgment in favor of Georgia Power must be reversed and the case remanded to allow both defendants to retain new counsel.

1. I do not agree with the majority that Reese has no standing to raise the disqualification issue. The majority's assertion that " ' "[t]he

objection that an attorney is disqualified by reason of his representing adverse interests is available only to those as to whom the attorney in question sustains, or has sustained, the relation of attorney and client" [Cit.]' " is incorrect. On at least one occasion, this court has heard and decided a case involving a disqualification motion filed by a party who was not previously or at that time represented by the attorney against whom the motion was directed, and this court did not find a standing problem. See *First Nat. Bank of Chattooga County v. Rapides Bank &c. Co.*, 145 Ga. App. 514 (4) (244 SE2d 51) (1978). For other cases in which the conflict of interest issue was examined by our courts even though it was raised by someone other than a client or former client of the attorney in question, see *Georgia State Bd. of Pharmacy v. Lovvorn*, 255 Ga. 259 (336 SE2d 238) (1985); *Georgia Dept. of Human Resources v. Sistrunk*, 249 Ga. 543 (291 SE2d 524) (1982); *Blumenfeld v. Borenstein*, 247 Ga. 406 (276 SE2d 607) (1981); *Rivers v. Goodson*, 184 Ga. App. 70 (360 SE2d 740) (1987). All of the cases upon which the majority relies are from foreign jurisdictions, and all but *Tadier v. American Photocopy Equip. Co.*, 531 FSupp. 35 (S.D. N.Y.) (1981), were decided before the United States Supreme Court handed down its decision in *Wood v. Georgia*, 450 U. S. 261 (101 SC 1097, 67 LE2d 220) (1981). In *Wood*, the United States Supreme Court found that opposing counsel has standing to raise a conflict of interest issue, particularly when the attorney on whom the conflict of interest charge focused would be unlikely to concede that he had continued improperly to act as counsel, and his clients, low level employees of the codefendant, were not capable of protecting their own interests on their own initiative. Id. 450 U. S. at 265. Those elements are present in the case before us. *Tadier* makes no mention of the *Wood* case, but still concludes, based on a 1980 New York district court case, that the court should reach the merits of the disqualification motion. That decision is in line with *Wood* and the opinion of others who have examined the issue in depth. "[S]tanding to raise the conflict of interest issue is not limited to clients or former clients. An opposing lawyer, whether representing a former client or not, may properly complain about a lawyer's conflict of interest. The justification for this rule is the public interest in protecting the integrity of the legal process. The right to complain about a conflict of interest, thus, is extended to persons who are placed at a disadvantage by reason of a lawyer's breach of an ethical duty. . . . [Cit.]" Patterson, "An Analysis of Conflicts of Interest Problems," 37 Mercer Law Rev. 569, 591 (Winter 1986). (Fn. ommitted.)

2. In addressing the merits of the motion to disqualify, our decision must be based, to a great extent, on those rules, regulations, and ethical considerations to which all members of our state bar must adhere. Standard 36 of the Rules and Regulations of the State Bar of

Georgia states: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Standard 37 . . . ." Standard 37 states: "A lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. A violation of this standard may be punished by disbarment." Standard 38 states: "If a lawyer is required to decline employment or to withdraw from employment under Standards 35, 36, or 37, no partner or associate of his or his firm may accept or continue such employment . . . ."

In the case before us, Georgia Power could have taken two positions with regard to its employee Standley, one of which conflicted with his interests and the other of which did not. There would be no conflict (i.e., both parties would benefit) if Standley is shown not to have been acting negligently at the time of the accident, regardless of whether or not he was acting within the scope of his employment. However, there is a conflict if Standley is shown to have been acting outside the scope of his employment when the accident occurred, since that would relieve Georgia Power, but not Standley, of all liability regardless of Standley's negligence. When Georgia Power moved for summary judgment, its counsel prepared a supporting affidavit in which Standley admitted that he was acting outside the scope of his employment, thereby exposing himself to sole liability for the damages appellant seeks. The seriousness of this conflict made disqualification appropriate. *Dunton v. County of Suffolk*, 729 F2d 903, 908 (2nd Cir. 1984). Counsel for Georgia Power advocated a position that created a conflict between Georgia Power and its codefendant, the attorney's other client, thereby impairing "the exercise of [its counsel's] independent professional judgment on behalf of [Standley,] and [he] is likely to be adversely affected by [counsel's] representation of [Georgia Power] . . . ." Standard 36, supra. It is also obvious that defendants' counsel cannot adequately represent the interest of each of the clients. See Standard 37, supra. Moreover, the record contains absolutely no showing that either client consented to the attorney's multiple employment "after full disclosure of the possible effect of such representation on the exercise of [the attorney's] independent professional judgment on behalf of each." Id. The circumstance of representing multiple clients in this manner was inconsistent with defendants' attorney's professional obligation to Standley, and created an impermissible appearance of impropriety prohibited by the Canons of Ethics. For that reason, the motion to disqualify should have been granted. Id.; *Crawford W. Long Mem. Hosp. &c. v. Yerby*, 258

Ga. 720, 722 (373 SE2d 749) (1988). This court has previously held that even "potentially conflicting interest [are a sufficient basis upon which to] grant the motion to disqualify the attorney from any further involvement in the case, even though he may have acted in good faith and with the consent of both clients. 'Where the fact that an attorney represents conflicting interests comes to the attention of the court before which a cause is pending, the court is required to prevent the attorney from continuing so to act. The test in such cases is not the actuality of conflict, but the possibility that conflict may arise.' [Cits.]" *First Nat. Bank of Chattooga County*, supra at 518. That holding was reiterated in *Collins v. Levine*, 156 Ga. App. 502 (2) (274 SE2d 841) (1980), where this court stated, "[w]e held quite clearly in *First Nat. Bank* [supra], that where defendants represented by the same counsel have *potentially* conflicting interests in a case, the counsel should be withdrawn even though he may have acted in good faith and with the consent of both clients." (Emphasis supplied.) In both cases, this court found that it was error to deny the appellants' motions to disqualify counsel. See also *Young v. Champion*, 142 Ga. App. 687 (1) (236 SE2d 783) (1977), in which the same standard was applied and this court found that the trial court properly disqualified the attorney. While it is true that there is no per se rule to disqualify an attorney on the basis of an appearance of impropriety alone, where the appearance is coupled with a conflict of interest, "disqualification is always justified and indeed mandated, even when balanced against a client's right to an attorney of choice . . . . In these instances, it is clear that the disqualification is necessary for the protection of the client." *Blumenfeld v. Borenstein*, supra at 409. In the case before us, we have a clear conflict of interests, and thus disqualification is mandated. The majority's position that " 'the appearance of impropriety, alone, "is too slender a reed on which to rest a disqualification order except in the rarest case" ' " flies in the face of the standard set by the Canons of Ethics and our own Supreme Court. See *Crawford W. Long Mem. Hosp.*, supra at 722. "It is an old and well-established maxim of law that the appearance of evil is as much to be abhorred as is the evil itself . . . . It goes without citation that an attorney is an officer of the court, and, as such, occupies a unique and high calling with equally high obligations to maintain professional integrity and conduct. This high office as an attorney incapacitates the attorney from representing different interests which are adverse in the sense that they are hostile, antagonistic or in conflict with each other. [Cits.]" *Young v. Champion*, supra at 689.

It is my solemn belief that we of the judiciary cannot merely pay "lip service" to the ethical standards and boundaries that we are sworn to uphold. The public as a whole has become more aware of the role of ethics in our society. More and more, public scrutiny has fo-

cused on the personal and professional ethics of those who would govern us, and many have been found to be lacking in this regard. When, as here, we are given the opportunity to provide guidance to and instill public trust and confidence in our profession, we can do no less than to let the light of integrity shine. This is particularly true when the reason for failing to do so is, as the majority implies, so as not to "cause delay." I am convinced that the bench, the bar, and the public deserve better. " 'In this State, where the stability of Courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing Justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of this State and the Republic, of which it is a member, to a great extent, depends upon our maintenance of Justice pure and unsullied. It cannot be so maintained unless the conduct and motives of the members of our profession are such as to merit the approval of all just men [and women]'. [Cit.]" *Young v. Champion,* supra.

Assuming, for the moment, that Standley has not expressed unhappiness with the representation that he has received thus far, it is my opinion that he must be given the opportunity to be represented by counsel that will truly serve as his sole advocate and act in *his* best interest. Under those circumstances, Georgia Power would also need to retain new counsel pursuant to Standard 38, supra. " '[A]n attorney cannot, upon the termination of any employment, represent one *whose interest in the transaction is adverse* to that of his former client,' and . . . the " ' "incapacity of an attorney to *represent adverse interests* also disqualifies him from representing *interest which are in conflict with the interest of his former client, for the obligation of fidelity and loyalty still continues."* ' " *Summerlin v. Johnson,* 176 Ga. App. 336 (335 SE2d 879) (1985) (on motion for rehearing). For all of the reasons discussed, I believe that we should remand the case to the trial court with direction to proceed in a manner not inconsistent with what I have outlined above.

In light of my foregoing analysis of the case, I am of the opinion that the grant of summary judgment to Georgia Power must be reversed on the ground that counsel should have been disqualified. Once the parties are represented by new counsel, the trial court could entertain new motions for summary judgment.

I am authorized to state that Presiding Judge Deen joins in this opinion.

McMURRAY, Presiding Judge, dissenting.

Although I agree with the first two divisions of the majority opinion, I must respectfully dissent as to Division 3 as I find a genuine

issue of material fact remains as to whether Standley was acting within the scope of his employment at the time of the collision.

" 'A presumption arises when an employee is operating his employer's automobile at the time of a collision, that he was acting within the scope of his employment. *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776 (257 SE2d 186) (1979); *Johnstown Fin. Corp. v. Roper*, 170 Ga. App. 575 (317 SE2d 634) (1984); *Massey v. Henderson*, 138 Ga. App. 565 (226 SE2d 750) (1976). On a defendant's motion for summary judgment, however, "(w)hen the uncontradicted testimony of the defendant and/or the employee shows that the employee was not acting within the scope of his employment at the time of the accident, the plaintiff must show, in addition to the facts which give rise to the presumption that he was in the course of his employment, some other fact which indicates the employee was acting within the scope of his employment. If this 'other fact' is *direct* evidence, that is sufficient for the case to go to a jury. However, when the 'other fact' is *circumstantial* evidence, it must be evidence sufficient to support a verdict in order to withstand the defendant's motion for summary judgment." *Allen Kane's Major Dodge v. Barnes*, supra at 780. Circumstantial evidence which is consistent with the defendant's evidence used to rebut the presumption will not support a verdict. Id. at 781.' *Fred A. York, Inc. v. Moss*, 176 Ga. App. 350, 351 (335 SE2d 618)." *Trollinger v. Bob & Carolyn Ford*, 180 Ga. App. 252 (1) (349 SE2d 11).

In the case sub judice, Georgia Power contends that there was no other fact, either circumstantial or direct, to indicate that Standley was acting within the scope of his employment at the time of the collision. Georgia Power relies primarily on portions of Standley's affidavit and the affidavit of Standley's foreman, wherein it is deposed that Standley was then operating Georgia Power's service vehicle without authority and while on a purely personal mission. Other relevant evidence in Standley's affidavit is not considered.

"All ambiguities and conclusions on consideration of summary judgment must be construed most favorably toward the respondent and against the movant. *J. C. Penney Cas. Ins. Co. v. Williams*, 149 Ga. App. 258, 261 (2) (253 SE2d 878)." *North v. Toco Hills*, 160 Ga. App. 116, 119 (286 SE2d 346). *Summers v. Milcon Corp.*, 134 Ga. App. 182, 183 (4) (213 SE2d 515). In the case sub judice, although Standley concluded that he had no authority to use a company vehicle during his lunch hour, he also deposed that he was a "mechanic crew leader" for Georgia Power; that he was furnished a company service vehicle to drive to and from work and that the purpose of his having a company vehicle available to him was so that he would be available to his employer "in case of an emergency. . . ." Construing this evidence in a light most favorable to Reese, it is a reasonable

conclusion that Standley's access to Georgia Power service vehicles was an integral part of his job; that it was for his personal benefit as well as for the benefit and convenience of Georgia Power and that Standley was therefore acting within the scope of his employment at the time of the collision. *Duffee v. Rader*, 178 Ga. App. 517, 518 (1) (344 SE2d 258). See *Georgia Power Co. v. Mozingo*, 132 Ga. App. 666, 668 (4) (209 SE2d 66). Consequently, it is my view that the trial court erred in granting summary judgment to Georgia Power as a genuine issue of material fact remains for determination by a jury as to whether Standley was acting within the scope of his employment at the time of the collision. See *Allen Kane's Major Dodge v. Barnes*, supra at 783.

I am authorized to state that Chief Judge Carley joins in this dissent.

DECIDED MARCH 17, 1989 —
REHEARING DENIED MARCH 29, 1989 — ▮▮▮▮▮▮▮▮▮▮

*John S. Beauchamp & Associates, Kermit S. Dorough, Jr.,* for appellant.

*Burt & Burt, Hilliard P. Burt, Terry J. Marlowe,* for appellees.