## S00G1368. GEORGIA PORTS AUTHORITY v. HARRIS.

(549 SE2d 95)

HUNSTEIN, Justice.

We granted certiorari in this case to determine whether the Court of Appeals correctly concluded that the ante litem notice sent by appellee William Harris via Federal Express to appellant Georgia Ports Authority complied with the delivery and receipt requirements in OCGA § 50-21-26 (a) (2). *Georgia Ports Auth. v. Harris*, 243 Ga. App. 508 (1) (b) (533 SE2d 404) (2000). Finding no error in that ruling, we affirm.

1. As an initial matter, we address the motion filed by GPA to disqualify Thomas C. Bordeaux, Jr., counsel for Harris, on the basis that Mr. Bordeaux's membership in the Georgia House of Representatives, representing District 151, creates a conflict of interest requiring his disqualification. *Georgia Dept. of Human Resources v. Sistrunk*, 249 Ga. 543 (291 SE2d 524) (1982). In response to the motion, Representative Bordeaux promptly informed the Court that he will abide by our decision and that if an impermissible conflict is found, he will immediately correct the situation by waiving his fee. See *Georgia State Bd. of Pharmacy v. Lovvorn*, 255 Ga. 259 (336 SE2d 238) (1985). However, he urges the Court to reconsider our holding in *Sistrunk*, supra, in which the majority held that "the [Georgia] Constitution prohibits a legislator from representing a client, for his own financial gain, in any civil transaction or matter wherein the State of Georgia shall be an opposing party." Id. at 547. We agree that such reconsideration is appropriate.

We recognized at the time *Sistrunk* was rendered that its blanket rule of disqualification of lawyer-legislators in civil cases against the State placed Georgia in a distinct minority. Id. at 554 (Smith, J., dissenting). Over the past 19 years, this Court has had the opportunity to observe the effect of the *Sistrunk* rule and compare its application to the less-draconian approaches utilized by the majority of our sister states to address conflicts of interest and the appearance of impropriety which arise when lawyer-legislators represent parties in civil actions against the government they serve. We see that fair and workable systems have been created which have avoided the conflict issues while minimizing the adverse consequences that result from a per se prohibition against lawyer-legislators representing clients against the government. We also take note of the enactment the year after *Sistrunk* of the public officers and employees conflicts of interest statutes, OCGA § 45-10-20 et seq., Ga. L. 1983, p. 1326, in which the Legislature recognized not only the need for an impartial and independent government and public confidence in the integrity of government, issues which form the core of our holding in *Sistrunk*, but recognized that it is

also essential to the proper operation of government that those best qualified be encouraged to serve the government. Accordingly, legal safeguards against conflicts of interest must be so designed as not unnecessarily or unreasonably to impede the recruitment and retention by the government of those men and women who are best qualified to serve it. An essential principle underlying the staffing of our government structure is that its elected officials and employees should not be denied the opportunity, available to all other citizens, to acquire and retain private economic and other interests, except where conflicts with the responsibility of such elected officials and employees to the public cannot be avoided.

OCGA § 45-10-21 (b).

While we reaffirm the lofty goals that prompted a majority of this Court to create the bright-line rule set forth in *Sistrunk*, we find nothing in Art. I, Sec. II, Par. I which mandates the blanket disqualification rule the *Sistrunk* majority adopted. Since we are not constitutionally compelled to apply a blanket disqualification rule, we have reevaluated the need for that rule. Many of the problems with the rule were articulately stated in the three dissents to the *Sistrunk* opinion. In particular, we recognize that the blanket disqualification rule acts to deprive the General Assembly of many quality individuals who would not be able to serve the public because of the economic disadvantage it creates, in contravention of the Legislature's express recognition that conflicts rules should not unreasonably impede the recruitment of quality individuals who are essential to the proper operation of government. OCGA § 45-10-21 (b). This disincentive unfairly burdens members of the legal profession since no comparable restriction is placed on public servants who have chosen to pursue other, non-legal careers. Indeed, the *Sistrunk* rule has been singled out as an important factor in the decline in the number of attorney members in the Georgia House of Representatives. See Murphy, Some Thoughts on Lawyer/Legislators in the Georgia House of Representatives, 23 Ga.St.B.J. 110 (1987). Furthermore, while the *Sistrunk* rule applies specifically to lawyers who seek to serve the public by membership in the General Assembly, its adverse influence can be detected in the reluctance shown by attorneys who would like to serve the public in other worthy, albeit part-time or even pro bono, capacities but who hesitate to do so out of concern about the effect disqualification may have on them and their firms.

Another problem we stress is the anomalous situation the *Sistrunk* rule creates between civil and criminal cases, allowing lawyer-legislators to represent persons suspected of or charged with crimes

for a fee even in situations where it is the State itself paying for that representation. See *Thompson v. State*, 254 Ga. 393 (2) (330 SE2d 348) (1985) (application of *Sistrunk* limited to civil cases). This issue in turn points to another difficulty, namely, that lawyer-legislators can avoid a violation of the *Sistrunk* rule by agreeing to waive any fee when representing civil litigants against the State. As was noted in *Lovvorn*, supra, the *Sistrunk* Court was not concerned with any appearance of impropriety on the part of the lawyer-legislator representing a civil litigant against the State or with the possibility of any political influence the lawyer-legislator might wield in an administrative or judicial forum. Rather, the Court's focus was on the lawyer-legislator's personal financial gain; hence, *Sistrunk* holds only that a lawyer-legislator may not use his or her *legislative* office to attract clients to sue the State to generate fees for the lawyer-legislator's *law* office. *Lovvorn*, supra, 255 Ga. at 260. Although ethical obligations continue to apply in non-fee cases, nothing in *Sistrunk* itself prohibits a lawyer-legislator from representing a civil litigant in a suit against the State in any forum, including administrative hearings or proceedings directly in front of a State agency regarding which the lawyer-legislator may have some oversight, so long as that representation is not financially compensated. By resorting to a blanket prohibition based on "personal financial gain" rather than allowing a case-by-case analysis based on the fact-sensitive circumstances of each case, the *Sistrunk* rule fails to cure many of the evils it was adopted to address.

There remains one overarching concern with the *Sistrunk* blanket disqualification rule and that is its basic premise that any lawyer who serves as a public officer will, upon being offered a fee, automatically act contrary to both the public trust and all professional obligations as an officer of the courts. We agree with Chief Justice Jordan who, in dissent in *Sistrunk*, found it "highly conceivable that a lawyer-legislator in most cases can live up to his duties and obligations which he incurs in each capacity without a significant disqualifying conflict of interest." Id. at 549. We decline to presume that the lawyer-legislator will always fail to honor his or her obligations to the public trust as a public servant and to the legal profession as an officer of the courts and prefer instead to expect the highest standards of ethical behavior from the men and women admitted to the bar who have been entrusted by the public to represent their interests.

Accordingly, we take this opportunity now to join the overwhelming majority of states and adopt the ad hoc conflicts of interest standard proposed by the dissents in *Sistrunk*, supra. Accord *Thompson v. State*, supra, 254 Ga. at 396 (2) (declining to impose per se rule of disqualification on part-time solicitors and requiring ad hoc analy-

sis to determine whether actual conflict of interest existed to justify disqualification). Instead of presuming impropriety, we choose instead to "punish wrongdoing when it occurs. Mechanisms for punishment of official wrongdoing and preventing conflicts of interest are available and should be utilized in appropriate cases." *Sistrunk*, supra at 551-552 (Clarke, J., dissenting). Looking solely to the facts of this particular case, there is no allegation of improper conduct or any imputation of professional wrongdoing by Representative Bordeaux. Therefore, GPA's motion to disqualify counsel is hereby denied.

2. Turning to the merits of the appeal, appellee's claim against GPA arises out of a work accident which occurred on December 20, 1993. Appellee subsequently filed suit against GPA,[1] which GPA moved to dismiss for appellee's failure to provide it with timely ante litem notice. The record reflects that within 30 days after GPA filed its motion, see OCGA § 50-21-26 (a) (4), appellee amended his complaint to attach, inter alia, a copy of a December 16, 1994 letter from appellee's prior counsel to Douglas Williams of the Risk Management Division of the Department of Administrative Services (DOAS). The letter enclosed a document which set forth all the matters required by OCGA § 50-21-26 (a) (5). On the face of the letter is a stamp which reflects "RECEIVED DEC 20 1994 DOAS/FISCAL DIVISION"; the letter also bears the handwritten claim number assigned to appellee's claim by DOAS. In addition to this letter, appellee attached to his amended complaint the Federal Express air bill prepared by appellee's prior counsel, pursuant to which the letter was sent overnight to Williams at the address of the DOAS Risk Management Division.[2]

The Legislature enacted the Georgia Tort Claims Act, OCGA § 50-21-20 et seq., in order to balance strict application of the doctrine of sovereign immunity against the need for limited exposure of the State treasury to tort liability. *Norris v. Dept. of Transp.*, 268 Ga. 192 (486 SE2d 826) (1997). The GTCA expressly provides that the State shall only be liable within the limitations of the Act, OCGA § 50-21-21 (a), which includes the ante litem notice requirements in OCGA § 50-21-26. *Norris*, supra. Under the version of OCGA § 50-21-

---

[1] Ruthie Mae Harris, appellee's wife, also filed a complaint asserting loss of consortium. The Court of Appeals affirmed the trial court's ruling that Ms. Harris failed to provide timely ante litem notice of her claim, *Ga. Ports Auth.*, supra, 243 Ga. App. at 515 (8), and no issue regarding that ruling is before this Court.

[2] OCGA § 50-21-26 (a) (2) also requires a copy of the notice to be delivered to "the state government entity, the act or omissions of which are asserted as the basis of the claim." The Court of Appeals affirmed the trial court's determination that appellee complied with this requirement. *Ga. Ports Auth.*, supra, 243 Ga. App. at 511 (1) (b), n. 5.

26 (a) (2) applicable to this case,[3] the requisite written notice could be delivered "by certified mail, return receipt requested, or delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services."

We agree with the Court of Appeals that the Federal Express delivery of the December 16, 1994 letter and accompanying enclosure satisfied the personal delivery requirement of OCGA § 50-21-26 (a) (2). Although OCGA § 50-21-26 (a) (2) specifies that delivery must be personal, it sets forth no limitations on the persons allowed to make the delivery. In this instance, appellee's counsel hired the services of Federal Express to make a personal delivery of the notice on DOAS. Appellee's documents establish that the notice was personally delivered to DOAS by an employee of Federal Express. That delivery is as valid as if appellee himself had hand delivered the document.

The crucial aspect here is the statutory requirement of a DOAS receipt for the personal delivery of the ante litem notice. GPA argues that the Federal Express delivery of appellee's notice was insufficient because of the lack of a receipt. While we agree with the Court of Appeals that the receipt requirement was intended to protect potential claimants, *Ga. Ports Auth.*, supra, 243 Ga. App. at 512 (1) (b), OCGA § 50-21-26 (a) (2) nevertheless clearly requires potential claimants to comply with that requirement. It is the public policy of this State, as expressly declared by the Legislature, that the State "shall only be liable in tort actions within the limitations of [the GTCA] and in accordance with the fair and uniform principles established" therein. OCGA § 50-21-21 (a). Accordingly, we disapprove the language in the Court of Appeals' opinion intimating that potential claimants may waive the express statutory requirement that a receipt be obtained for personally delivered ante litem notices and reaffirm that the GTCA must be strictly construed.

We need not determine whether the Federal Express air bill qualified as a receipt, however, because the record establishes that appellee obtained the requisite receipt. That receipt was adduced into evidence in the form of the copy of the December 16, 1994 letter which appellee obtained when it was produced by DOAS during discovery proceedings. Although appellee did not obtain the receipt at the time of the personal delivery of the notice, the Court of Appeals correctly noted that OCGA § 50-21-26 (a) (2) "does not — literally — say *when* or *how* the receipt must be obtained." *Ga. Ports Auth.*, supra, 243 Ga. App. at 512 (1) (b), n. 6. In *Norris* we declined to "create a harsh and unreasonable rule" regarding the actual receipt of

---

[3] OCGA § 50-21-26 (a) (2) was amended effective July 1, 2000 to provide for "statutory overnight delivery" as another acceptable means of delivery for the required ante litem notice. Ga. L. 2000, p. 1589, § 3.

the ante litem notice when that result was not mandated by the GTCA, id. at 193, and we likewise decline here to penalize a claimant who obtained the requisite receipt from DOAS in a manner not disallowed by the Act.

Accordingly, because appellee strictly complied with the ante litem notice requirements of the GTCA, the Court of Appeals correctly affirmed the trial court's denial of GPA's motion to dismiss. *Ga. Ports Auth.*, supra, 243 Ga. App. at 511 (1) (b).

3. Because we find that the documents attached to appellee's amended complaint were sufficient to show compliance with OCGA § 50-21-26, we need not address whether the Court of Appeals correctly ruled in *Ga. Ports Auth.*, supra, 243 Ga. App. at 509 (1) (a), that the trial court was authorized to consider matters beyond the pleadings in ruling on GPA's motion to dismiss due to lack of ante litem notice.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 2, 2001 —
RECONSIDERATION DENIED JULY 27, 2001.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, George S. Zier, Assistant Attorney General, Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney III, Thomas J. Mahoney, Jr., Mary K. Moss*, for appellant.

*Bordeaux & Abbot, Thomas C. Bordeaux, Jr., Jones, Boykin, Stacy & Associates, Noble L. Boykin, Jr., Moseley, Warren, Prichard & Parrish, James F. Moseley, Jr., Shari S. Miltiades*, for appellee.