A01A1049, A01A1050. BRYAN v. BROWN CHILDS REALTY COMPANY, INC.; and vice versa.
(556 SE2d 554)

SMITH, Presiding Judge.

We consider for the second time this dispute involving an agreement between plaintiff Brown Childs Realty and defendant Robert C. Bryan in connection with Bryan's purchase of a tract of real estate. This agreement, styled "Realtor's Commission Agreement," provided for various forms of compensation to Brown Childs in addition to the realtor's commission paid by the sellers of the property, including a

deferred payment on a per-acre basis, an exclusive listing agreement for resale of the property with a six percent commission, and an equal sharing of the proceeds of any future sale between Bryan and Brown Childs. After Bryan obtained an option contract on a portion of the property without the assistance of Brown Childs, Brown Childs sought assurances that its earlier agreement with Bryan would be honored. Bryan repudiated the agreement, and this action followed.

In *Bryan v. Brown Childs Realty Co.*, 236 Ga. App. 739 (513 SE2d 271) (1999), we affirmed the trial court's grant of partial summary judgment in favor of Brown Childs on the issue of standing to bring the action. We concluded that Brown Childs's claim was not barred by OCGA § 43-40-24 (b) even though its real estate license was not in force for a period of time, because the license was in force at the time its claim against Bryan arose. Id. at 740 (1). After filing of the notice of appeal, the trial court had amended its order to grant summary judgment in favor of Bryan on the issue of whether the agreement created an equitable interest in the underlying realty. This amended order was held void and the appeal dismissed for lack of jurisdiction. Id. at 742 (2).

After remand, the case proceeded to trial and a jury verdict in favor of Brown Childs. Bryan's motion for new trial was denied, and he appeals, asserting three enumerations of error. Finding no error in Case No. A01A1049, we affirm. On cross-appeal in Case No. A01A1050, Brown Childs has asserted as error the trial court's grant of a directed verdict on its claim for an equitable interest. Because some evidence was presented at trial from which the jury could have concluded that an equitable interest was created, we reverse in Case No. A01A1050.

## Case No. A01A1049

1. Bryan's first enumeration of error contains two assertions, both relating to evidence concerning the surrender and revocation of Brown Childs's real estate licenses after remand of the earlier appeal.[1] Bryan contends that the trial court erred in denying his motion for directed verdict on the basis of OCGA § 43-40-24 (b) and in granting Brown Childs's motion in limine, despite this court's ruling in the previous appearance of this case. We disagree.

---

[1] The surrender arose out of a complaint filed by Bryan with the Georgia Real Estate Commission in 1997. In August 1998, Brown Childs surrendered its real estate license and those of its salesman and broker on the ground of the ill health of Mr. Burton Brown Childs, the salesman and stockholder. Mr. Childs's wife testified at trial that he was suffering from Parkinson's, dementia, and "the beginning stages of Alzheimer's." As a result of the surrender, the investigation of Bryan's complaint was terminated, and the licenses were revoked.

(a) This court's previous ruling is the law of the case. OCGA § 9-11-60 (h) provides: "[t]he law of the case rule is abolished; . . . provided, however, that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."

> The "law of the case" rule, though formally abolished, still applies to rulings by one of our appellate courts in a particular case; such rulings are binding in all subsequent proceedings in the same matter, including a second trial. An exception to this rule exists where the evidentiary posture of the case changes after remand by the appellate court. The evidentiary posture may change when a new issue not previously addressed by an appellate court is properly raised, or when the original evidence is insufficient but is later supplemented.

(Citations omitted.) *Lowman v. Advanced Drainage Systems*, 228 Ga. App. 182, 183-184 (491 SE2d 427) (1997). As our previous ruling made plain, the significant time for purposes of OCGA § 43-40-24 is "that point in time when the alleged cause of action arose." *Bryan*, supra at 741 (1). As Brown Childs's real estate license was in force at the time Bryan repudiated the agreement, any earlier or subsequent changes in its license status have no effect on Brown Childs's standing to bring this cause of action.

Bryan also argues that the sale of a portion of the subject real property changes the evidentiary posture of the case. He first contends that the sale of that portion of the property and settlement of the commission owing to Brown Childs destroy its standing, because he must have standing to assert any additional claims on future sales of the property. But the parties executed a partial release and settlement agreement concerning the sale of that portion of the realty while the earlier appeal of this case was pending. That agreement states that it was entered into in order to permit the partial sale and contains the explicit provision that "[a]ll claims and defenses relating to the remainder of the . . . tract shall remain between the parties, shall remain pending in the above-captioned lawsuit, and shall not be affected by this partial settlement and release" and that

> [t]he parties' claims, defenses, issues on appeal, and any and all other matters relating to the above-captioned action including plaintiff's claims against defendant Robert C. Bryan, personally, for money damages and other relief, shall continue with regard to the remaining property and shall not be affected by this partial settlement and release.

The holding that Brown Childs has standing to assert its claims based on the date of breach of the underlying agreement is the law of the case and is not affected by the settlement of a portion of this action with the explicit agreement that all claims and defenses shall remain pending and unaffected by the settlement.

Bryan also contends that he should have been able to introduce the surrender or revocation of Brown Childs's licenses in order to attack Brown Childs's entitlement to commissions on any future sales. But a judgment will not be reversed on the basis of exclusion of testimony which is merely cumulative of other evidence already admitted. *Ga. Ports Auth. v. Harris*, 243 Ga. App. 508, 514 (5) (533 SE2d 404) (2000), aff'd, 274 Ga. 146 (549 SE2d 95) (2001). With respect to the future earning of commissions, the jury already had testimony before it that Mr. Childs was incapacitated and that Brown Childs was no longer doing business. Even without evidence that the real estate licenses of the company had been surrendered and revoked, Bryan was able to contend from that evidence that Brown Childs would be unable to earn commissions from any future sales. In fact, Bryan made precisely that contention in closing argument. He noted Mr. Childs's incapacitation, argued that there were "no sales produced and none ever going to be produced by him in the future," and contended that Brown Childs was engaging in "some sort of extortion" because Mr. Childs said he was "going to retire out of this case." With respect to damages, Bryan's arguments were limited to challenging the market analysis of Brown Childs's expert, arguing that the parties intended for the agreement to extend only for six months to a year and contending that any claim of damages was too speculative because the remainder of the land had not sold at the time of trial. But nothing prevented Bryan from applying his argument regarding Mr. Childs's incapacitation and inability to produce future commissions to the issue of damages.

Moreover, it is apparent from the verdict that the jury award did not include damages for commissions on any future sales. As pointed out by Brown Childs in connection with another issue on appeal, the amount of the jury's verdict is based entirely upon Brown Childs's original deferred commission on Bryan's purchase of the property, $156,000. Bryan's accountant calculated Bryan's "opportunity cost," or what Bryan could have earned on the money used to purchase the property, at eight percent. The jury awarded exactly the sum of $156,000, compounded at eight percent annually from 1992 to 1999 and rounded to the nearest dollar. Since the jury did not award any future commissions to Brown Childs, any error in excluding evidence that might have mitigated against an award of such future commissions was harmless. *Oak Creek Dev. Corp. v. Hartline-Thomas, Inc.*, 138 Ga. App. 83, 87 (2) (225 SE2d 515) (1976); see also *Vada Corp. v.*

*Harrell,* 156 Ga. App. 137, 141 (273 SE2d 877) (1980).

(b) The trial court did not err in granting a motion in limine on the issue of Brown Childs's real estate licenses. "The admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. However, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." (Citations and punctuation omitted.) *Homebuilders Assn. of Ga. v. Morris,* 238 Ga. App. 194, 195 (518 SE2d 194) (1999). Here, the trial court correctly concluded on the basis of this court's previous ruling that evidence of Brown Childs's licensing status was irrelevant to its standing to bring this action. The trial court later exercised its discretion to modify its motion in limine, allowing Bryan to testify as to his belief regarding the revocation and its effect on his decision to repudiate the subject agreement. The trial court clearly exercised its discretion in concluding that some of the proposed testimony was necessary to show Bryan's beliefs and "part of his reason for terminating or canceling the contract" but rejecting other portions of the proffered evidence, because "the inflammatory aspects of it perhaps are too great for me to let it go to the jury."

The trial court also gave an instruction to the jury explaining the limited purpose of this testimony and cautioning jurors that "[t]he issue of Mr. Childs' license is not before you. Mr. Childs is properly before the Court. And you will base your decision upon the Court's instruction and the evidence that's been produced to you. His license status is not before you." As noted above, the issue of Brown Childs's inability to produce future commissions was before the jury and addressed by Bryan in closing argument.

The trial court's thoughtful consideration of this court's prior ruling, the circumstances of the trial, and the relative value of the proposed testimony before making its decision is the essence of discretion, and we find no abuse here.

2. Bryan next complains that the trial court erred in allowing the testimony of Brown Childs's expert on the issue of damages. But Bryan did not make a contemporaneous objection to the witness's qualifications as an expert or to his testimony. After redirect and recross-examination of the expert the trial court asked, "Anything else?" and Bryan's counsel responded, "No, sir." While Bryan eventually moved to strike the expert's testimony, he did not do so until after two unrelated intervening matters were discussed, after another witness testified on both direct and cross-examination, and after the plaintiff rested its case. When a party "failed to make contemporaneous objections but chose to make a motion to strike the testimony[, f]ailure to object contemporaneously waived the objection and the right to request untimely curative instructions. [Cit.]" *Dept.*

*of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 4 (5) (505 SE2d 549) (1998). Motions to strike provide an exception to the "contemporaneous objection rule" only when testimony appears admissible at the time of its presentation but later evidence renders it inadmissible. *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 268 (476 SE2d 722) (1996). The intervening motions and testimony bore no relation to this expert's evidence and provided no basis for a delayed motion to strike. Bryan's attempted objection came too late, and he has failed to preserve this enumeration for review.

3. Finally, Bryan contends the trial court erred in allowing the issue of attorney fees to go to the jury. OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

> A plaintiff may recover for bad faith concerning the transactions and dealings out of which the cause of action arose. A bona fide controversy within the contemplation of the code section pertains solely to the issue of stubborn litigiousness or causing the plaintiff unnecessary trouble and expense. Despite the existence of a bona fide controversy as to liability, a jury may find that defendant acted in the most atrocious bad faith in his dealing with the plaintiff. The question is whether there was bad faith concerning the transactions and dealings out of which the cause of action arose.

(Citations and punctuation omitted.) *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 878 (4) (482 SE2d 498) (1997). "The standard of review of an award of attorney fees under OCGA § 13-6-11 is whether there is any evidence to support the award. [Cit.]" *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990).

Here, Brown Childs presented some evidence of bad faith upon which the jury could have based its award. Brown Childs's claims, as noted above, are based upon a document styled "Realtor's Commission Agreement" entered into by Bryan and Brown Childs. Brown Childs's president and a sales agent testified that the agreement was proposed by Bryan, and Bryan acknowledged proposing portions of the agreement, specifically the profit-sharing provisions. The agreement was drafted by Bryan's counsel. Evidence was presented that Bryan and Brown Childs had a longstanding relationship and had entered into similar agreements in the past. Bryan testified that he had a verbal agreement with Brown Childs for the agreement to ter-

minate in six months to a year, but he acknowledged that through an "oversight," he did not place a provision to that effect in the agreement. He also acknowledged that he did not state that basis in his counsel's letter to Brown Childs repudiating the agreement. And at trial, Bryan acknowledged that Brown Childs was owed the deferred commissions recited in the agreement.

A mere refusal to pay a just debt, standing alone, is insufficient to support an award of attorney fees under OCGA § 13-6-11. But it may be sufficient when

> it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. There may be bad faith in carrying out the provisions of the contract sufficient to support the award. We have previously upheld awards pursuant to OCGA § 13-6-11 which arose out of the defendant's actions in breaching the contract, i.e., where the refusal to pay a debt was not made in good faith but was an attempt to defeat the clear intent of the contract.

(Citations and punctuation omitted.) *Sass v. First Nat. Bank &c.*, 228 Ga. App. 7, 8 (1) (491 SE2d 76) (1997). Under these circumstances, some evidence was presented that Bryan repudiated the agreement not in good faith but in an attempt to defeat the terms of a contract that he himself had drafted because they proved disadvantageous to him. The trial court did not err in denying Bryan's motion for a directed verdict on the issue of attorney fees.

### Case No. A01A1050

In its sole enumeration of error on cross-appeal, Brown Childs asserts that the trial court erred in granting a directed verdict on the issue of whether its agreement with Bryan created an equitable interest in the subject property. We agree.

The "Realtor's Commission Agreement" provides in its first two paragraphs for a deferred payment of additional compensation and "a realtor's commission of 6%." The third paragraph, which forms the basis of Brown Childs's claim, provides:

> In addition to the above, Bryan and Childs shall agree to divide the sales proceeds upon any resale as follows: (1) from the gross seller's proceeds of sale there shall first be deducted the realtor's 6% commission, as well as the $1,000 per acre deferred commission expense; (2) from the balance there shall next be subtracted the seller's closing costs; (3) there shall next be deducted and paid to Bryan the sum of $20,233 per acre as Bryan's recoupment of his acquisition

> cost; (4) from the remaining funds there shall next be subtracted the sum of $10,000 per acre representing Bryan's net profit to be received on the project; (5) the remaining sum shall be shared equally by Bryan and Childs.

This provision does not expressly create an equitable interest in the underlying realty, but it clearly and unambiguously provides for an equal division or sharing of sales proceeds after the deduction of Bryan's profit and certain costs and expenses, including a real estate commission. The Supreme Court of Georgia has held that an agreement to pay 50 percent of the profits to be derived from the sale of a tract of land may create an equitable interest in that land. *Bennett v. Padgett*, 237 Ga. 532, 533-534 (228 SE2d 909) (1976).

Bryan argues that the agreement's title establishes that it is merely an agreement for a real estate commission. But, even if ambiguous, a contract must be construed to "give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." (Citations and punctuation omitted.) *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 316 (1) (554 SE2d 296) (2001). Viewed in this light, the language of the third paragraph is an agreement "to divide the sales proceeds" separate and apart from other portions of the agreement expressly providing for a commission. To construe the entire agreement as providing solely for a conventional real estate commission, as Bryan urges, would render paragraph three meaningless.

In his brief, Bryan argues that the testimony adduced at trial shows unambiguously that the parties' intent was contrary to the plain language of the agreement and that the facts do not support the agreement's creation of an equitable interest. In support of this proposition, he cites the affirmative response of a Brown Childs sales representative to the suggestion that the agreement was "purely for the payment of commissions." But Bryan neglects to cite the following page, on which the witness clarified that the subject agreement was *also* a partnership with provision for splitting of the proceeds of the sale. Brown Childs's president testified that the agreement was a partnership and did not require that Brown Childs sell the property in the future. She also testified that the deferred commission was invested into the property. Bryan also contends that Brown Childs's expert made damaging admissions regarding the nature of the agreement. But the expert specifically addressed the issue of present value of the partnership or arrangement for dividing of proceeds, performing calculations based upon a step-by-step process that he explained to the jury.

We state no opinion as to whether Brown Childs might ulti-

mately prevail on the basis of the evidence presented at trial. It may be, as Bryan contends, that sufficient evidence was presented to cause the jury to return a verdict in favor of Bryan, either by contradicting the parties' intentions regarding the division of sales proceeds or by demonstrating that damages were too remote and speculative for ascertainment. But, as in *Bennett,* supra, "[g]enuine fact issues were presented to the jury," id. at 533, and the jury should have been allowed to consider the conflicting testimony adduced at trial on this issue. The trial court therefore erred in taking this decision from the jury.

*Judgment affirmed in Case No. A01A1049. Judgment reversed in Case No. A01A1050. Barnes and Phipps, JJ., concur.*

DECIDED NOVEMBER 16, 2001 — 

*Edenfield, Cox, Bruce & Classens, Gerald M. Edenfield, Susan W. Cox, Robert S. Lanier, Jr.,* for appellant.

*Franklin, Taulbee, Rushing, Snipes & Marsh, James B. Franklin, Daniel B. Snipes,* for appellee.