## 74260. WESTINGHOUSE ELECTRIC CORPORATION
### v. WILLIAMS et al.
(360 SE2d 411)

BEASLEY, Judge.

Westinghouse appeals from the orders denying its motion for summary judgment on the main complaint, granting the summary judgment motion of third-party defendant Dobbs-Paschal Midfield Corporation, and dismissing Westinghouse's third-party complaint against Dobbs-Paschal. The pertinent background facts are set out in *Westinghouse v. Williams*, 173 Ga. App. 118, 121 (325 SE2d 460) (1984). We there held for the purpose of this case that the only basis for recovery by Williams was against Westinghouse on strict liability.

1. Our opinion on the prior appearance of this case found an issue of fact was raised as to whether the Automated Guideway Transit System was defective within the purview of OCGA § 51-1-11 (b) in two respects: "lack of seats in the AGTS car and the car's deceleration rate for emergency stops." After remand Westinghouse endeavored to eliminate the issues regarding defects by means of affidavits of two experts. It attempted to show that the force resulting from an emergency stop (the maximum, all-out stop by the AGTS) was not sufficient to injure plaintiff. However, plaintiff responded with two affidavits by her experts who disputed Westinghouse's assertions.

Plaintiff was standing, facing sideways to the direction of travel and holding the vertical pole provided for passengers. Plaintiff's engineering expert testified that braking the "train" exerts a force which bends the body of a passenger in the direction of travel and in an area through the body's length between shoulders and feet; that in addition there is also a torquing or twisting of the passenger's body.

Plaintiff's medical expert stated that "torque is the most common cause of disc injury and the twisting, or whipping, motion need not be severe to cause a disc injury, even in a healthy person." He also gave as his medical opinion based on experience and examination of plaintiff that "the incident of the train suddenly stopping and the forces applied to Mrs. Williams' body during the lateral movement were the precipitating cause of the injury to the spine suffered by Mrs. Williams."

All of the evidence presented, when considered in its entirety, did not negate the claim that the rate of deceleration for an emergency stop was a defect.

Genuine issues of material fact therefore still remain. Westinghouse has advanced persuasive argument regarding the existence of any defects at the time of manufacture and as to the lack of a showing that the injury resulted from a defective product. However, the record in *Westinghouse*, 173 Ga. App. 118, supra, reveals that these same issues and the same facts on which Westinghouse now relies

were before the court in that appeal. We are bound by the previous decision that plaintiff is entitled to a jury trial on the issue of product liability. "[R]ulings of the appellate courts are binding in all subsequent proceedings in the trial or appellate courts." *Stafford Enterprises v. American Cyanamid Co.*, 164 Ga. App. 646, 650 (297 SE2d 307) (1982); OCGA § 9-11-60 (h).

Westinghouse having failed to remove the factual issues this Court formerly found, the denial of summary judgment was compelled.

2. We turn next to the issues involving the third party, Dobbs-Paschal. Westinghouse sought by third-party complaint to bring in Dobbs-Paschal on the theory that it was obligated to Westinghouse because of an indemnity provision contained in a contract between the City of Atlanta and Dobbs-Paschal as the "principal concessionaire" at Hartsfield Atlanta International Airport. The indemnity provision was contained in Section 16 of the Agreement and reads as follows: "It is an express condition of this Agreement that, except where caused solely by its or their negligence, City, the Contracting Airlines, their elected officials and their officers, agents and employees shall be free from any and all claims, debts, demands, liabilities or causes of action of every kind or character, whether in law or in equity, by reason of any death, injury or damage to any person or persons or damage or destruction of property or loss of use thereof, whether it be the person or property of Principal Concessionaire, its subconcessionaires, agents or employees, or of any third persons, from any cause or causes whatsoever arising from any event or occurrence in or upon the Concessions Space or any part thereof or otherwise arising from Principal Concessionaire's operations under and during the term of this Agreement; and Principal Concessionaire shall indemnify and save harmless City, the Contracting Airlines, their elected officials and their officers, agents, and employees, against and from any and all such claims, demands, debts, liabilities and causes of action (including attorney's fees and costs). The obligation of Principal Concessionaire under this Section shall also cover any party who provides Maintenance and Operations services in the TBA pursuant to an arrangement with the Contracting Airlines."

In granting Dobbs-Paschal's motion for summary judgment the trial court noted: Westinghouse was not a party to the indemnity agreement; the agreement did not apply to the claims in this case; there was a serious public policy question raised by a manufacturer's (Westinghouse) attempt to transfer liability to parties unrelated to the product in a products liability case.

"[T]he scope of . . . indemnity provisions . . . , manifested in the form of written contracts, is a question of law for the court." *Molly Pitcher &c. v. Central &c. R. Co.*, 149 Ga. App. 5, 8 (2) (253

SE2d 392) (1979). A contract of indemnification is construed strictly against the indemnitee. *Foster v. Nix*, 173 Ga. App. 720, 724 (1) (327 SE2d 833) (1985). "In the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence." *Batson-Cook Co. v. Ga. Marble &c. Co.*, 112 Ga. App. 226, 230 (144 SE2d 547) (1965).

Westinghouse was not a party to the contract and not, within normal parlance, an agent of the indemnitee. Westinghouse, however, argues that although it was an independent contractor, it was an agent within the meaning of the indemnity provision and covered by the language in the last sentence, i.e., "any party who provides maintenance and operations services in the TBA pursuant to an arrangement with the Contracting Airline."

Simply stated, Westinghouse is not an indemnitee within the contemplation of the agreement. The AGTS by definition is expressly excluded as a part of the TBA. The provision indemnifies "causes whatsoever arising from any event or occurrence in or upon the Concessions Space or any part thereof or otherwise arising from Principal Concessionaire's operations under and during the term of this Agreement." AGTS operation does not fall within such categorization. Furthermore, Westinghouse is outside the agreement's ambit, when the indemnity portion is strictly construed as must be done. Despite the fact that it may have close contacts with the City or Contracting Airlines, Westinghouse may be considered an agent only in a very specialized and strained sense of the term. This stretching we decline to do and thus we find no indemnification under the contract.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 8, 1987 —
REHEARING DENIED JULY 28, 1987 —

*Lawrence S. Burnat, Lynn C. Stewart*, for appellant.
*G. Michael Banick, Lowell S. Fine*, for appellees.