United States Court of Appeals,

Eleventh Circuit.

No. 94-2782.

Eva F. LARUE, his wife, Plaintiff,

v.

JOANN M., a vessel Joann M., Inc., Defendants.

FLORIDA TOWING CORP., Claimant,

Joann M. Limited Partnership, a foreign partnership, the vessel's owner, Defendant-Third-party Plaintiff-Counter-Defendant-Appellant,

v.

MORAN TOWING OF FLORIDA, INC., Third-party Defendant-Counter-Claimant-Appellee.

Jan. 23, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-378-CIV-J-16), John H. Moore, II, Chief Judge.

Before HATCHETT and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

Plaintiff Edward H. Larue was a seaman employed as deckhand on a tug owned and operated by Moran Towing. In the Port of Jacksonville the tug provided towing service to the Joann M. and assisted the Joann M. to her berth. When the tug's duties were completed she commenced retrieving from the deck of the Joann M. the 200 pound tow line that she had provided to the vessel. This required crewmen of the Joann M. to lift the "eye" of the line off the bitt on which it was secured on the deck of the Joann M., walk it to an opening on the side of that vessel, and release it to the deck of the tug, which lay alongside with its deck approximately 30 feet below the deck of the Joann M. Larue was stationed on the

deck of the tug coiling the tow line as it was released and came downward. Before the line was completely lowered it was suddenly released and fell downward from the Joann M., struck Larue on the neck and shoulders, and injured him.

Larue sued Joann M. Limited Partnership, owner of the vessel, in Florida state court, alleging negligence based on general maritime law. JMLP filed a third-party complaint against Moran claiming contribution and indemnity. Moran counterclaimed against JMLP for contribution and indemnity, but its indemnity counterclaim was dismissed by the court.

The case was tried to a jury. Although the third-party contribution/indemnity claims were in admiralty the parties agreed that the entire case should be submitted to the jury, which would determine issues of comparative fault. The jury found that JMLP was 100% negligent and rendered a verdict for plaintiff against JMLP for $1,000,000.

JMLP's post-trial motions for judgment as a matter of law and for a new trial were denied. The court entered judgment on the verdict against JMLP for the $1,000,000 and a take-nothing judgment against JMLP on its claims (contribution and indemnity) against Moran. It granted Moran $19,000 against JMLP, the amount that Moran had paid Larue in settlement of his potential claims against Moran. The judgment also granted Moran recovery from JMLP of maintenance and cure it had paid out.

JMLP appealed, and pending the appeal it settled with Larue. This left in controversy JMLP's claim against Moran for indemnity and contribution and Moran's counterclaim against JMLP for

contribution.  JMLP does not question the $19,000 award or the maintenance and cure award.

## I. Argument to the jury

JMLP insists strenuously and at great length that Moran's counsel deprived it of a fair trial by appealing to the jury to render a verdict against JMLP because members of its crew involved in releasing the tow line were foreigners.  The initial deficiency with this argument is that JMLP itself brought the issue of national origin into the case by suggesting to the jury that the seamen releasing the line were Filipinos who spoke the Tagalog dialect of their native country and therefore might have misunderstood English phrases spoken by the tug crew to mean "let go the line."  Counsel for Moran was entitled to respond that the standard of care required of a seaman from another country did not depend upon how well he understood the language of a particular port that was foreign to him.  But the overriding deficiency in JMLP's argument is that its counsel did not object to any part of Moran counsel's comments to the jury.  Even if any part of those comments was arguably improper it does not even approach plain error.

## II. Instructions to the jury

By agreement comparative fault was submitted to the jury. Plaintiff Larue had made no Jones Act claim against his employer Moran.  JMLP, however, requested the following jury instruction:

> In considering the allegation that Moran Towing of Florida, Inc., or its employees were negligent, you should take into account that Moran, as plaintiff's employer, owed a higher duty to plaintiff than the duty of reasonable care owed by Joann M. Limited Partnership.  As plaintiff's employer, Moran owed plaintiff a high degree of care in providing him a

safe work environment, and had a duty to properly supervise and instruct plaintiff as to the safe methods by which he could carry out his orders, or to warn plaintiff of the potential dangers he faced in completing the task he had been assigned to perform. Moran is liable for any negligence on its part in carrying out these duties if that negligence played any part, even the slightest, in producing any injury to plaintiff.

R. 3, p. 109. This sought to measure by Jones Act standards JMLP's third-party claim for contribution from Moran. The court rejected the proposed instruction and instead instructed that JMLP's third-party claim against Moran was governed by the same standards of negligence and causation as governed Larue's negligence claim against JMLP.

The Jones Act creates a cause of action for a seaman injured in the course of his employment by his employer's negligence, and the parameters of that cause of action are set by the statute. The general maritime law does not provide for such a claim. The difference between a general admiralty law claim and a Jones Act claim is not a mere semantic difference between a suit in admiralty and a suit at law; the difference is substantive and may determine whether there is a right to recover at all. *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063 (5th Cir.1981). In this case contribution and indemnity depend upon shared fault between the seaman's employer and another vessel. In determining how to ascertain or measure shared fault JMLP sought, as a third party, the benefit to it of the Jones Act statutory standards that spring from a relationship between Moran and its seamen that is governed by a statute not otherwise involved in the case.

Neither party cites to us any case in which the theory raised by JMLP has been adjudicated. The authorities are unclear in

comparing the underpinnings of Jones Act liability and general maritime law liability for negligence. Some address the comparison in terms of differing duties of care, with a higher duty or degree of care upon the Jones Act employer. Others speak of differing standards of reasonableness, still others of the Jones Act seaman's lesser ("featherweight") burden of proving causation, and others of "slight negligence" as compared with ordinary negligence. In this case the differing views of the parties arise in the context of a requested jury instruction and a jury verdict on an issue normally decided by the court. We leave for another case and another day the attempt to define with precision the levels—intellectual, analytical and legal—at which Jones Act liability and general maritime law liability differ, and their interplay in the contribution/indemnity context. First, the proposed instruction is confusing and misleading. If respective duties of care are to be defined to a jury the definition should be cast for each in respective but absolute terms. Defining the duty of one in terms of being higher (or lower) than the duty of the other leads the jury away from a proper determination for each. Second, in this case the parties by agreement sent to the jury the task of apportioning shared fault. Fairly read, the jury verdict is a finding that JMLP committed one hundred percent of the fault. Since Moran was determined to be wholly free from fault, the comparative extent of any fault attributable to it and the standards of causation relating to that comparative fault simply have no application. The requested jury instruction issue, directed to how to measure shared fault, dropped out of the case.

For the same reason the instruction actually given, if erroneous, was not reversible error.

### III. JMLP's claim for indemnity

The court entered a judgment denying recovery to JMLP for indemnity based upon alleged breach by Moran of its duty of workmanlike performance. The jury finding that one hundred percent of the negligence was committed by JMLP precludes the possibility that Moran engaged in conduct that "prevented or seriously hampered [JMLP's] performance of its duty in accordance with the warranty of workmanlike service." *Oglebay Norton Co. v. CSX Corporation,* 788 F.2d 361 (6th Cir.1986). This conclusion by the court was not merely authorized but indeed required by the jury's verdict.

AFFIRMED. Moran's motion to dismiss the appeal and its motion to award sanctions and costs (other than those normally assessed in an appeal) are DENIED.