A99A2012, A99A2013. GEORGIA PORTS AUTHORITY v. HARRIS
et al.; and vice versa.
(533 SE2d 404)

ELLINGTON, Judge.

In Case No. A99A2012, Georgia Ports Authority (GPA) appeals from the judgment entered on the jury's verdict in William N. and Ruthie Mae Harris' negligence suit under the Georgia Tort Claims Act (GTCA) for personal injuries suffered while Mr. Harris was working as a longshoreman at the Brunswick port.[1] In Case No. A99A2013, the Harrises cross-appeal. The cases are considered together.

Harris, working out of the International Longshoremen's union hall for stevedore Ryan-Walsh Shipping Company,[2] was injured on December 20, 1993, when he and others were attempting to remove a

---

[1] Mrs. Harris' claim is for loss of consortium and is addressed separately only as necessary.

[2] Ryan-Walsh is the third-party defendant sued by GPA. GPA contends Ryan-Walsh is liable to it for any damages to Harris based on an indemnity provision in the terminal tariff applicable to all who use the port. For its part, Ryan-Walsh asserted a lien on any recovery by Harris for reimbursement of $178,100.68, the amount it had paid in medical and wage benefits under the Longshore & Harbor Workers' Compensation Act, 33 USC § 933.

tarp from a stack of steel pipe which was to be loaded onto a waiting vessel. The steel had been removed from rail cars and stacked in the GPA yard by GPA workers on Friday, December 17, 1993. The steel was stacked in layers which were separated by four-inch by four-inch boards, called "dunnage." After the steel was stacked, the GPA workers sprayed the steel with a protective coating of oil and covered it with a tarp.

Because the tarp was holding standing water and could not be lifted off the steel by the men, Ryan-Walsh employees brought a fork-lift to the stack to help lift the tarp to allow the water to run off. As the water was draining off the tarp, the men heard a crack and a bundle of steel fell off the stack, severely injuring Harris. After the tarp was finally removed and the stack examined, it appeared that the GPA workers had not properly stacked the steel, causing the dunnage to break and one of the upper bundles of steel to fall.

### Case No. A99A2012

1. GPA's first and second enumerations deal with the trial court's denial of its motion to dismiss, which was finalized by the judgment appealed, and are considered together.

Prior to trial, GPA filed its motion to dismiss pursuant to OCGA § 9-11-12 (b) (1)-(6), contending that Harris had not given notice as required by OCGA § 50-21-26 (a) (2).[3] Although GPA argued, both at the hearing held on the motion to dismiss and during the trial, that the court should rule on the merits of the motion based solely on the pleadings, the court accepted both documentary and testimonial evidence on the issue of the validity of the notice.

(a) GPA contends the trial court erred by accepting evidence on this issue after initially denying the motion to dismiss based solely on the pleadings.

A review of the procedural history of this case is necessary to a resolution of this issue. Harris' complaint was originally filed in November 1995. As the claimed ante litem notice required by OCGA § 50-21-26, Harris attached a letter of July 26, 1994, addressed to Danny Thompson of GPA.[4] The letter was from Derrell DeHart, an insurance adjuster/claim manager for Ryan-Walsh. That letter stated that it was:

> to serve notice on the Georgia Ports Authority for potential liability in the accident and injury that occurred to ILA long-

---

[3] Only subsections (1), lack of jurisdiction over the subject matter, and (6), failure to state a claim upon which relief can be granted, are applicable to this situation.

[4] Although a second letter, this one from trial counsel and dated August 24, 1995, is also attached to the original complaint, that was not relied upon below and was acknowledged as untimely.

shoreman, William N. Harris, on December 20, 1993 in Brunswick, Georgia. Mr. Harris' injuries occurred as a result of section of pipe falling, causing extensive damage to his knee, ankle and shoulder.

After GPA filed its motion to dismiss on May 6, 1996, Harris filed his second amended complaint which attached, in addition to the DeHart letter, the December 16, 1994 letter from prior counsel for Harris, Linny Bailey. That letter enclosed a "State of Georgia Tort Claim" setting out the matters required by OCGA § 50-21-26 (a) (5). The copy of the letter attached to the complaint is marked "RECEIVED DEC 20 1994 DOAS/FISCAL DIVISION." The copy also bears the handwritten claim number assigned to Harris' claim by the Department of Administrative Services (DOAS). Also appended to the second amended complaint was the Federal Express air bill prepared by Bailey, pursuant to which the letter was sent overnight to Douglas Williams of the Risk Management Division of the DOAS.

At the hearing on GPA's motion to dismiss, held on April 3, 1997, GPA insisted that the matter was to be determined solely by reference to the "face of the pleadings in this case" and objected to consideration of evidence by the court. At the beginning of trial on March 30, 1998, the court revisited the issue of GPA's motion to dismiss. At that time, Harris had witnesses he wished to put on concerning the notice issue. GPA objected that the motion to dismiss had already been ruled on and that the court had already decided any issue of fact. The court pointed out, however, that the issue had been decided, based on GPA's position, solely on the pleadings and no factual determination had been made by the court. GPA then stated that "our contention [is] that the motion to dismiss is dispositive of all factual issues and that all those issues have been decided."

The court ruled that it would consider evidence regarding the issue of notice outside the presence of the jury and make factual determinations regarding notice. While GPA agreed that such evidence was not for the jury's consideration, it again urged that the issue should not be further considered by the court.

The crux of the issue is the mechanism by which it is determined whether a plaintiff has complied with the ante litem provisions of the statute, a question of subject matter jurisdiction. OCGA § 50-21-26 (a) (3) ("the courts shall have no jurisdiction . . . unless and until a written notice of claim has been timely presented to the state as provided in this subsection").

As pointed out by Harris and acknowledged by GPA, the lack of subject matter jurisdiction, such as failure to comply with the ante litem notice provisions of the GTCA, is a matter in abatement, not a motion designed to test the merits of the claim. *Ogden Equip. Co. v.*

*Talmadge Farms*, 232 Ga. 614, 615 (208 SE2d 459) (1974); *Pettus v. Drs. Paylay &c., P.C.*, 193 Ga. App. 335, 336 (387 SE2d 613) (1989); see *McGregor v. Stachel*, 200 Ga. App. 324 (1) (408 SE2d 118) (1991). As such, it is controlled by OCGA § 9-11-43 (b), which provides that: "[w]hen a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties, *but the court may direct* that the matter be heard wholly or partly on oral testimony or depositions. . . ." (Emphasis supplied.) *Ogden Equip. Co.*, 232 Ga. at 615. In this case, the trial court considered depositions and testimony at trial from attorney Bailey, Thompson, DeHart, and Williams to determine whether it had subject matter jurisdiction. The trial court did not err in considering evidence outside the pleadings for that purpose.

(b) We turn now to GPA's first enumeration: that the trial court erred in denying the motion to dismiss because Harris did not strictly comply with the GTCA's ante litem notice requirement. In its final judgment, the trial court stated that, having initially denied GPA's motion to dismiss, additional evidence was presented on the issue, outside the presence of the jury, during trial and that "a final ruling on Defendant's motion was deferred pending receipt of the verdict." The trial court then concluded that the ante litem notice signed by attorney Bailey and physically delivered to DOAS by Federal Express on the anniversary of the date of Mr. Harris' injury, with a copy sent by regular mail to GPA's Thompson, satisfied the GTCA.

OCGA § 50-21-26 (a) provides:

> No person . . . having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim as follows: . . . (2) Notice of a claim shall be given in writing and shall be mailed by certified mail, return receipt requested, or *delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services*. In addition, a copy shall be delivered personally to or mailed by first-class mail to the state government entity [involved].

(Emphasis supplied.) Because the Bailey letter was not sent by certified mail, the issue is whether the delivery by Federal Express constituted personal delivery in compliance with the emphasized portion of the statute.[5]

---

[5] Although GPA argues that Bailey's testimony alone was insufficient evidence that a copy was mailed to GPA's Thompson, that was a matter of credibility properly decided by the trial court.

Certainly, "[b]y its own terms, the State Tort Claims Act must be strictly construed," and we have held that substantial compliance with OCGA § 50-21-26 (a) (2) is insufficient. *Kim v. Dept. of Transp.*, 235 Ga. App. 480, 481 (2) (510 SE2d 50) (1998); see also *Howard v. State of Ga.*, 226 Ga. App. 543-544 (1) (487 SE2d 112) (1997). But we do not conclude, as the dissent does, that the Federal Express delivery failed to satisfy the personal delivery option because DOAS opted to accept Federal Express deliveries at one desk and did not issue a separate paper "receipt" for the delivery, while claimants, their attorneys or local couriers would have been directed to a different desk at which separate receipts were issued. The requirement that a receipt be obtained can only have been intended to protect potential claimants, by providing proof of delivery of the required notice, and to simplify the trial court's determination of whether the claimant had complied with OCGA § 50-21-26 (a) (2). In a case such as this, where actual receipt of the notice is admitted (and how could DOAS deny it, given its dated "received" stamp on the cover letter to Harris' ante litem notice?), the doctrine of strict compliance does not require us to use the receipt provision to harm the very party it was designed to benefit, namely, one with a tort claim against the state. We have since held that ante litem notices sent by United States mail, return receipt requested, are timely if mailed by the anniversary date of the injury even if the notice is not physically received by DOAS until after the one-year period has passed. *Norris v. Dept. of Transp.*, 268 Ga. 192, 193 (486 SE2d 826) (1997). It is unreasonable to penalize Harris for physically delivering his notice *more* promptly.[6]

2. GPA contends the trial court erred in the way it allocated the defense's peremptory jury challenges between GPA and Ryan-Walsh. Generally, two co-defendants would each be allowed to exercise three of the defense's six jury strikes. *Sheffield v. Lewis*, 246 Ga. 19, 20 (1) (268 SE2d 615) (1980). Where, as here, a third-party claim can be severed under OCGA § 9-11-42 (b), the trial court may exercise its discretion to grant additional jury strikes to the defendants. *Opatut v. Guest Pond Club*, 188 Ga. App. 478, 480 (2) (373 SE2d 372) (1988). Here, the trial court "considered the posture of the case, the respective claims of the parties, and the adverse nature of those claims," id., and granted GPA and Ryan-Walsh one additional jury strike each. Having reviewed the record, we find no abuse of discretion in

---

[6] The dissent's excessively narrow reading of the language "and a receipt obtained from" DOAS takes the principle of strict compliance too far. Indeed, taking the requirement of obtaining a receipt *from* DOAS to its absurd extreme, the cover letter to Harris' ante litem notice, stamped "received" by DOAS, should be considered his receipt. Presumably Harris did not receive it *from* DOAS until it was produced in discovery many months later, but the statute does not — literally — say *when* or *how* the receipt must be obtained.

the trial court's ruling.

3. GPA contends the trial court erred in excluding evidence regarding the GPA Tariff. GPA further contends the trial court abused its discretion in refusing to give its requested jury charge regarding Ryan-Walsh's alleged indemnity obligation pursuant to the tariff. The tariff at issue provided that users agreed "to indemnify and save harmless" GPA "from and against all losses, claims, demands and suits for damages," including personal injury "incident to or resulting from their operations on the property of [GPA] and the use of its facilities." The application of indemnity provisions contained in written contracts is a question of law for the court. *Westinghouse Elec. Corp. v. Williams*, 183 Ga. App. 845, 846 (2) (360 SE2d 411) (1987). Evidence regarding how any judgment in favor of Harris and against GPA and Ryan-Walsh jointly would have been allocated as a matter of law was utterly irrelevant to the jury's determination of negligence and damages. See generally Rumsey, Agnor's Ga. Evidence (3rd ed.), § 10-19, pp. 300-301. It follows that the trial court did not err in excluding evidence of the indemnity provision of the tariff and in refusing to charge the jury about the indemnity provision.

Furthermore, the tariff provided: "This Item is not to be construed as requiring any user to indemnify or hold harmless the Georgia Ports Authority for that portion or percentage of such losses, if any, caused by the negligence of the Georgia Ports Authority, its' [sic] agents or employees." The jury determined that GPA was negligent, its negligence was a proximate cause of Harris' injuries, and that neither Harris nor Ryan-Walsh was negligent; no other parties were alleged to be responsible for the collapse of the stacked steel. It follows that in this case the "portion or percentage of such losses caused by the negligence of" GPA was 100 percent. By its terms, the tariff did not require Ryan-Walsh to indemnify GPA for losses to the extent they resulted from GPA's negligence. Because GPA was wholly at fault, even if the trial court had admitted evidence of the indemnity provision of the tariff and instructed the jury about it, GPA could not have been relieved of paying the entire allowable judgment.

4. GPA contends the trial court abused its discretion in refusing to give its requested charge that Ryan-Walsh, as Harris' employer, owed Harris the primary duty to provide a safe work place and to protect him from an unreasonable risk of harm under the Longshore & Harbor Workers' Compensation Act. See 33 USC § 941 (a); *Ga. Ports Auth. v. Southeast Atlantic Cargo Operations*, 202 Ga. App. 318, 321 (2) (b) (414 SE2d 232) (1991). In its third-party complaint, GPA alleged "[t]he steel pipe was carelessly and negligently uncovered." Nor did GPA add any allegation that Ryan-Walsh had breached any higher duty of care derived from the federal act in the pretrial order. Because GPA did not raise the issue of anything more than simple

negligence before trial began, any such theory of recovery was waived. *Jackson v. Paces Ferry Dodge*, 183 Ga. App. 502, 503 (1) (359 SE2d 412) (1987).

Even assuming the pleadings were deemed automatically amended to conform to the evidence by OCGA § 9-11-15 (b), *Brackett v. Cartwright*, 231 Ga. App. 536, 537 (1) (499 SE2d 905) (1998), a standard of care which would apply to a claim by Harris against Ryan-Walsh cannot be asserted in GPA's third-party claim against Ryan-Walsh for indemnification. *Larue v. Joann M.*, 73 F3d 325, 327 (11th Cir. 1996).

5. GPA contends the trial court erred in excluding testimony from Harris' doctor that he could return to work. Excerpts of the doctor's deposition were read into the record at trial. The trial court excluded the question "Can he go back to work?" and the doctor's affirmative response for lack of foundation because the doctor admitted he did not know what Harris' duties as a longshoreman would be. But a review of the transcript shows that the doctor's testimony that Harris was not completely disabled and could return to work with restrictions was admitted. Therefore the excluded testimony was merely cumulative of admitted testimony; the judgment will not be reversed on this basis. *Complete Trucklease v. Auto Rental &c.*, 160 Ga. App. 568, 570 (1) (288 SE2d 75) (1981).

6. GPA contends the trial court erred in refusing to allow impeachment of Harris with a prior recorded statement. GPA attempted to impeach Harris with a statement made in a tape recorded interview. The investigator who conducted the interview was not available to testify, the transcript contained many indications of omissions and indecipherable speech, and the tape itself was barely audible. The trial court's conclusion that GPA did not lay a proper foundation for using the transcript for impeachment purposes was not clearly erroneous. OCGA § 24-9-83; see *Dyous v. State*, 195 Ga. App. 99, 100 (4) (392 SE2d 730) (1990).

### Case No. A99A2013

7. Harris contends the trial court erred in reducing the amount of damages awarded by the jury in his favor to $1,000,000 in accordance with OCGA § 50-21-29 which provides, "no person shall recover a sum exceeding $1 million because of loss arising from a single occurrence." Because of Ryan-Walsh's lien for medical and wage benefits paid under the Longshore & Harbor Workers' Compensation Act, Harris' net recovery will be reduced by almost 20 percent. Harris contends that he and Ryan-Walsh are two separate entities which suffered two separate losses from the occurrence on December 20, 1993, and, therefore, they should be subject to separate $1,000,000

caps. To the extent Ryan-Walsh's claim failed because the state did not receive timely ante litem notice of Ryan-Walsh's separate claim, Harris contends that he should not be penalized for Ryan-Walsh's failure to pursue its separate claim against GPA.

Pretermitting whether Ryan-Walsh could have recovered directly from GPA the amount it had paid Harris in medical and wage benefits, it did not pursue such a claim against GPA in this action. Harris cited no authority justifying adding to the $1,000,000 per person cap just because he is forced by operation of another law to reimburse Ryan-Walsh for benefits it paid before he secured a negligence judgment against GPA.[7]

8. Mrs. Harris contends the trial court erred in refusing to enter judgment in her favor and in denying her motion for partial new trial, based on its finding that she did not provide timely ante litem notice of her loss of consortium claim. Mrs. Harris argues that the Bailey letter — which did not mention her loss of consortium claim or even the fact that Mr. Harris was married — was sufficient to include her as a claimant. The authority relied upon by Mrs. Harris, *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 320 (1) (486 SE2d 851) (1997), holds that one person bringing suit as two distinct legal entities (in that case, a personal representative who was also an administratrix) is treated as two persons for purposes of the $1,000,000 limit on recovery. It does *not* indicate that a wife claiming loss of consortium does not have to serve a separate ante litem notice.

Mr. Harris, on the other hand, does not contend that he is one person who may recover in two separate legal capacities; he contends that notice of his claim gave notice of the derivative claim of a separate person, his wife. As noted above in Division 1, by its own terms, the ante litem notice provisions of the GTCA must be strictly construed, and this applies to the description of the nature of the loss claimed. *Williams v. Dept. of Human Resources*, 234 Ga. App. 638 (507 SE2d 230) (1998). In *Williams*, we held that a notice which described the loss suffered as a woman's pain, disfigurement, and reduced life expectancy and her husband's loss of consortium, sent while the woman was still alive, did not provide notice of the husband's later-accruing claim for his wife's wrongful death. Id. at 639-640. We must conclude that notice of Mr. Harris' claim did not give notice of Mrs. Harris' loss of consortium claim, and the trial court's

---

[7] While it is true that under Georgia's workers' compensation law an employer's lien for medical and wage benefits is not enforceable against an injured employee's tort recovery until the employee has been fully and completely compensated for all economic and noneconomic losses incurred as a result of the injury, OCGA § 34-9-11.1 (b); see *North Bros. Co. v. Thomas*, 236 Ga. App. 839, 841-842 (513 SE2d 251) (1999), the federal Longshore & Harbor Workers' Compensation Act is not controlled by a similar full compensation rule. *Peters v. North River Ins. Co.*, 764 F2d 306, 312 (5th Cir. 1985).

entry of judgment for GPA on Mrs. Harris' claim was proper.

*Judgments affirmed. McMurray, P. J., Blackburn, P. J., Ruffin, Eldridge and Barnes, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

I must respectfully dissent in Case No. A99A2012, because there was no compliance by William Harris with the ante litem notice requirements of OCGA § 50-21-26 (a).

Compliance by a plaintiff with the ante litem provisions of the statute is a question of subject matter jurisdiction. OCGA § 50-21-26 (a) (3) ("the courts shall have no jurisdiction . . . unless and until a written notice of claim has been timely presented to the state *as provided in this subsection*") (emphasis supplied).

The trial court concluded that the Federal Express delivery initiated by attorney Bailey and mailing a copy by regular mail to Georgia Ports Authority's Thompson satisfied the Georgia Tort Claims Act.

OCGA § 50-21-26 (a) provides that:

> No person . . . having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim as follows: . . . (2) Notice of a claim shall be given in writing and shall be mailed by certified mail, return receipt requested, or *delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services.* In addition, a copy shall be delivered personally to or mailed by first-class mail to the state government entity [involved].

(Emphasis supplied.)

Since Harris did not opt to use the certified mail, return receipt method of giving notice, compliance with the GTCA must be found in delivery by a private delivery company, Federal Express, to DOAS. The "receipt" required by the statute can only, under the facts of this case, be the Federal Express air bill filled out by attorney Bailey or the recipient's copy of the air bill left with DOAS. Bailey testified that Harris' Exhibit 43 was his copy of the air bill, prepared in and maintained by his office, and Harris' Exhibit 42 was the recipient's copy which was left with DOAS by Federal Express. Harris' Exhibit 41A is a copy of Bailey's notice letter, marked received by DOAS Fiscal Division and provided by DOAS to Harris during discovery. This, apparently, is the linchpin upon which the majority would hang compliance with the ante litem provision, since the evidence does not reflect that anything was obtained by the Federal Express delivery

person from DOAS and returned to Bailey. The only proof that Bailey had that, in fact, the letter had been delivered to DOAS was a notation on his bill from Federal Express, indicating the "person or entity that it was addressed to and . . . the date that it was received." Bailey acknowledged that he no longer had a copy of the Federal Express bill reflecting delivery of the Harris notice and that he had received nothing from DOAS indicating receipt of the notice.

It is unclear from what portion of the GTCA the majority has divined that the purpose of the ante litem notice requirement of a receipt from DOAS is to protect the claimant, since the notice provisions are also for the benefit of the State.[8]

In *Norris v. Dept. of Transp.*, 268 Ga. 192 (486 SE2d 826) (1997), the Supreme Court noted that:

> The stated intent of the Act is to balance strict application of the doctrine of sovereign immunity, which may produce "inherently unfair and inequitable results," against the need for limited "exposure of the state treasury to tort liability." OCGA § 50-21-21 (a). The legislature expressly declared as "the public policy of this state that the state shall only be liable in tort actions within the limitations of [the Act] and in accordance with the fair and uniform principles established" therein. OCGA § 50-21-21 (a).

*Norris* also emphasized that:

> The plain language of OCGA § 50-21-26 (a) (2) provides *two alternative methods of transmitting written notice — mailing or personal delivery*. As the Code section specifies, notice "shall be mailed by certified mail, return receipt requested, *or* delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services. . . .

(Emphasis in original and supplied.) Id. at 192-193.

In *Norris*, while notice had been sent certified mail, return receipt requested, one of the two methods provided by OCGA § 50-21-26 (a), the notice had not been received by DOAS within the year, a requirement which had been read into the statute by the courts based on a comparable, but different, federal statute. The Supreme Court held that mailing by the method set out in the statute

---

[8] Such a conclusion is bolstered by the fact that DOAS receives, by all methods, 40,000 to 50,000 documents a week and they are dealt with differently depending on the method of their delivery.

"presented" notice to the State under the statute.

Based on the majority's reasoning here, mailing of the notice no longer has to be by certified mail, return receipt requested, because, if a claimant can show that DOAS had notice, by whatever method obtained, that would suffice, in contravention of *Norris*, supra.

Such a conclusion ignores the well-established canon of statutory construction, inclusio unius, exclusio alterius, i.e., the inclusion of one implies the exclusion of others. See, e.g., *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U. S. 79, 86 (114 SC 2048, 129 LE2d 67) (1994); *Blackwell v. State*, 237 Ga. App. 896, 897 (516 SE2d 787) (1999). Here, the legislature specified two specific methods of delivering notice, thereby impliedly excluding others.

Here, even assuming without deciding that the use of a private delivery service such as Federal Express might be deemed "personal delivery" under that option, a further conjunctive and, I believe, contemporaneous requirement is contained in the statute, i.e., the obtaining of a receipt "from the Risk Management Division of the Department of Administrative Services."

As repeatedly held, "the Georgia Tort Claims Act will be strictly construed. [Cits.]" *Williams v. Dept. of Human Resources*, 234 Ga. App. 638, 640 (507 SE2d 230) (1998), cert. granted, Case No. S99G0178 (issued October 13, 1999). Substantial compliance with the requirements of the GTCA's provisions will not suffice. *Kim v. Dept. of Transp.*, 235 Ga. App. 480 (510 SE2d 50) (1998).

Harris argues that showing that DOAS did receive the notice should suffice, based on the presence of DOAS' receipt stamp on the copy of the Bailey letter attached to the complaint. That, however, does not satisfy the requirement that, if personal delivery is used, a receipt must be obtained "from" the department. To hold otherwise would amount to a finding that substantial compliance will suffice. As set out above, until Harris obtained from DOAS the copy of the notice stamped "received," he had NOTHING from DOAS indicating receipt of the notice, only the documents prepared by Federal Express.

The majority's rationale would also seem to imply that any time a litigant has actual notice of a lawsuit, the courts should find that the requisites of valid personal service are present, even if the requirements of numerous statutes have not been met. See, e.g., *Joyner v. Schiess*, 236 Ga. App. 316 (512 SE2d 62) (1999) (OCGA § 9-11-4 (d) (7)); *Ameribank, N.A. v. Quattlebaum*, 220 Ga. App. 345, 347 (2) (469 SE2d 462) (1996) (OCGA § 44-14-161 (c)); *Five Star Steel Contractors v. Colonial Credit Union*, 208 Ga. App. 694, 695 (431 SE2d 712) (1993) (OCGA § 18-4-62 (a)).

Alternatives for notification within the act are the purview of the

legislature, not this Court. *State Ethics Commr. v. Moore*, 214 Ga. App. 236, 239 (447 SE2d 687) (1994).

DECIDED MARCH 30, 2000 —
RECONSIDERATION DENIED APRIL 13, 2000 — 

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Kathleen M. Pacious, Deputy Attorneys General, R. O. Lerer, Senior Assistant Attorney General, George S. Zier, Assistant Attorney General, Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney, Jr., Thomas J. Mahoney III, Mary Kathryn Hogan, for appellant.*

*Jones, Boykin, Stacy & Associates, Noble L. Boykin, Jr., for appellees.*