A05A0463. FEIST et al. v. DIRR et al.
(609 SE2d 111)

ELDRIDGE, Judge.

Richard and Mary Beth Feist sued Michael A. Dirr, the Board of Regents of the University System of Georgia, and Mark Griffith, d/b/a

Griffith Propagation Nursery for breach of contract, fraud, conversion, negligent bailment, and deceptive trade practices. Dirr answered and moved for judgment on the pleadings, which the trial court, after notice, converted into a motion for summary judgment on grounds of sovereign immunity and the Georgia Tort Claims Act. The trial court granted the motion. Finding no error, we affirm.

All of the Feists' allegations are in pleadings, and their appellate brief cites to the record of pleadings and not evidence in the trial court supporting such allegations on each essential element of each claim.

In the summer of 1994, Dirr, a professor of horticulture at the University of Georgia, visited the Feists' nursery in Burlington, Kentucky, and inspected the Feists' dwarf Iteas and Forthergilla major plants, which the Feists had developed. Feist allowed Dirr to take cuttings from selected plants and to conduct tests to determine the plants' uniform reproducibility, distinctive characteristics, and the performance of the plants in the Southeast; these tests were to be done at the University of Georgia in Dirr's woody plant trials. Dirr grew a large number of plants from the cuttings and reported his findings to Feist. Dirr published an article about these new dwarf Iteas which stated that these plants could be patented and that millions of such plants could be sold.

In a letter by Dirr to Feist, Dirr asked: "Will you name them? I do not want to do anything with them until you give the go-ahead." The letter makes no explanation of what Dirr was referring to or what he meant.

Mrs. Feist gave an affidavit which states "[t]hat she was present on or about July 8, 1995 [sic], when Michael A. Dirr visited her home and nursery in Burlington, Kentucky"; "[t]hat during said visit she listened to and participated in a conversation with Mr. Michael A. Dirr and Richard Feist, and the substance of the conversation was a plan to patent the dwarf Itea clones"; "[l]ater, during the visit, she had a private conversation with Michael A. Dirr. In this conversation she asked Michael A. Dirr if he needed any money to pay the legal and other expenses that would be incurred in obtaining patents on the dwarf Itea clones"; "Michael A. Dirr replied to her inquiry by saying that the university would pay the expenses incurred in obtaining patents on the plants and that the university would be reimbursed from future royalty payments from the sale of the plants"; "that her understanding from Michael A. Dirr's reference to the university in his answer was that he meant the University of Georgia at Athens, Georgia"; and that "[s]till later, during the visit, Michael A. Dirr remarked that the royalties we would receive from the sale of the plants would pay for the college education of all of our children." This

is the closest that the evidence in the record comes to showing any oral agreement, but it is too vague, ambiguous, and uncertain for enforcement.

Feist alleges that the Little Henry was ready to be introduced on the market, and Feist patented this plant; Spring Meadow Nursery was to grow it. Feist alleges that he and Dirr made an agreement to share the royalties to support Dirr's program.

Feist alleges that Dirr gave some of the plants that came from cuttings from Feist's plants to Griffith and other growers. He alleged that one plant was Little Henry and that another was Feisterform, which he alleges was later called Merlot. Feist alleges that the two dwarf Iteas, Little Henry and Feisterform, are similar but have different characteristics.

As part of his employment as a professor of horticulture, Dirr took the cuttings from Feist for trials and evaluation, but Feist also gave cuttings to Don Shadow and Mike Hayman, so there was no confidentiality or nondisclosure agreements for anyone. When Dirr received the cuttings from Feist without any nondisclosure or confidentiality agreements, they had no agreement regarding the development of such cuttings.

Mark Griffith was a former student of Dirr's, but they had no personal business together; Dirr used Griffith as a conduit for increasing the numbers of new materials and moving plants to the larger growers, which plants were offered to any nursery growers or amateurs. Dirr gave these plants to anyone who wanted them, including Griffith. Of the plants whose cuttings were taken by Dirr, Wight Nurseries eventually grew Little Henry, and Griffith Propagation Nursery grew Feist Container Form.

Dirr testified that in 1994, as a professor of horticulture, he took between 11 and 17 cuttings from Feist, rooted them for trials, and shared them with others, as well as with Griffith, to evaluate them for commercial development. All this was done within the scope of his employment by the University of Georgia. Dirr, personally, received no monetary gain from the commercial sale of either Itea.

Dr. Douglas A. Bailey, head of the Department of Horticulture, testified that, as Dirr's supervisor, Dirr's conduct was within the scope of his employment. Dr. Gary A. Couvillon, a professor of horticulture at the University of Georgia, testified that, as immediate supervisor, Dirr had acted within the scope of his employment.

1. Feist contends that the trial court erred in granting summary judgment.

(a) The evidence in the record fails to support an essential element of each theory of recovery asserted by the Feists in their lawsuit against Dirr in his individual capacity. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

(b) There is no issue as to material fact showing a waiver of sovereign immunity and sovereign immunity bars this action, because at all times Dirr acted within the scope of his authority as a state employee. OCGA §§ 50-21-23 (a); 50-21-24.

Although Feist alleges intentional misconduct by Dirr that harmed him, there is no evidence to support such allegations. Further, allegations that Dirr acted intentionally or wilfully does not remove Dirr from the scope of his employment for purposes of the Georgia Tort Claims Act. OCGA § 50-21-25 (a); *Wang v. Moore*, 247 Ga. App. 666, 668-669 (1) (544 SE2d 486) (2001); *Hardin v. Phillips*, 249 Ga. App. 541, 543-545 (1) (547 SE2d 565) (2001).

> In order to decide whether [the state employees] are entitled to the immunity they claim, which is a question of law, we must determine three issues: (1) whether the [Georgia Tort Claims Act] applies to this action; (2) whether [the defendants] are state employees; and if so, (3) whether their actions were committed within the scope of their employment.

(Footnote omitted.) *Hardin v. Phillips*, supra at 543 (1). Where the state employee acts "in the prosecution and within the scope of" the employer's business, intentional wrongful conduct comes within and remains within the scope of the employment. *Jones v. Dixie Ohio Express*, 116 Ga. App. 155, 156-157 (1) (156 SE2d 388) (1967); *Andrews v. Norvell*, 65 Ga. App. 241, 243-244 (15 SE2d 808) (1941).

(c) Under the Georgia Tort Claims Act, absent a statutory waiver of sovereign immunity after proper notice, the trial court lacks subject matter jurisdiction to consider such case, because constitutional sovereign immunity deprives Georgia courts of the power to consider such claims. *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002). A trial court must determine at the first opportunity whether it has subject matter jurisdiction to deal with an issue even if there is a dispute as to facts. *Whitlock v. Barrett*, 158 Ga. App. 100, 103 (4) (279 SE2d 244) (1981). "Where the determination of subject matter jurisdiction and waiver of sovereign immunity are so factually intertwined with determination of the merits of case," the trial court may determine such issue or defer until final determination at trial, but such determination of subject matter jurisdiction shall be made prior to entry of judgment, and any jury determination on such issue would be advisory only. *Dept. of Transp. v. Dupree*, supra at 672 (1) (a). "A holding that issues of fact remained would necessitate the resolution of those facts and a determination of jurisdiction by the trial court; it would not be cause for submission to a jury." (Citation and punctuation omitted.) Id. at 672; accord *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 842-843 (1) (392 SE2d

37) (1990). Where the trial court must determine an issue in abatement, i.e., subject matter jurisdiction, the determination of such disputed factual issue is not a determination on the merits, because the merits of the case are never tested. OCGA § 9-11-12 (b); *Ga. Ports Auth. v. Harris*, 243 Ga. App. 508, 510-512 (1) (533 SE2d 404) (2000); *Dept. of Transp. v. Dupree*, supra at 671. All claims against Dirr in his official capacity performed while in the scope of his employment must be abated, because the trial court lacked subject matter jurisdiction absent a waiver of sovereign immunity under the Georgia Tort Claims Act.

2. The other enumerations of error are controlled by Division 1.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur in judgment only.*

---

DECIDED DECEMBER 13, 2004 —
RECONSIDERATION DENIED DECEMBER 30, 2004 — 

*Cynthia E. Call*, for appellants.

*Thurbert E. Baker, Attorney General, G. Michael Banick, Assistant Attorney General, Cooke, Noell, Tolley, Bates & Michael, Edward D. Tolley, Smith, Gambrell & Russell, J. Rodgers Lunsford III, Troutman Sanders, Jeffrey C. Morgan*, for appellees.